UNITED STATES of America, Plaintiff,

v.

Mearle D. THOMPSON and James A. Wilson, Defendants.

Cr. No. 13085.

United States District Court
N. D. California, N. D.

Feb. 16, 1962.

---

Cecil F. Poole, U. S. Atty., and William J. Cooney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

A. Richard Backus and Reynold J. Gualco, Sacramento, Cal., for defendants.

HALBERT, District Judge.

Defendants have been indicted for having illegal possession of an unregistered firearm in violation of Title 26 U. S.C. § 5841. Defendants presently have before the Court two motions, each of which has been timely made. The first is a motion to dismiss the indictment on the ground that it fails to charge an offense (Federal Rules of Criminal Procedure, Rule 12(b) ), 18 U.S.C., and the second is a motion to suppress as evidence the shotgun which is the subject of the charge contained in the indictment on file in this case (Federal Rules of Criminal Procedure, Rule 41(c) ).[1]

## I. The Facts

The facts which will here concern us are not in substantial dispute and are relatively simple. On the night of August 5, 1961, at about 11:30 p. m., the defendants, Thompson and Wilson, were in an automobile with three other boys, and were driving within the limits of the City of Sacramento, California. Two Sacramento police officers on regular duty stopped the automobile being driven by defendant Thompson allegedly to check a loud exhaust or faulty muffler. In the course of a search, the details of which are not here pertinent, made when the automobile was stopped (This is the search challenged by the defendants.), one of the officers found a J. Stevens Model 94, single barrel, 16 gauge shotgun, having a barrel length of 12½ inches. After the discovery of the shotgun, the defendants were placed in custody and taken to the police station.

At a hearing on defendants' motions, held on October 10, 1961, the Government stipulated that the shotgun found by the officers had no firing pin in it when it was seized by the officers, and that no firing pin for the gun was found on or about the defendants when they were arrested.

## II. The Law

Defendants having been indicted under the provisions of Title 26 U.S.C. § 5841,[2] certain definitions which appear

---

1. The conclusion reached by the Court on the first motion makes it unnecessary to reach the motion to suppress. No further consideration will be given such motion in this memorandum and order.

2. "Every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is

within Chapter 53 of Title 26 U.S.C., dealing with firearms generally,[3] should first be examined. Such an examination discloses that these definitions do not deal with the specific question at issue, namely, whether a shotgun (in this case a sawed-off shotgun) without a firing pin constitutes a firearm proscribed by the provisions of Chapter 53 of Title 26 U.S.C. (the National Firearms Act of 1934).

A search of the legislative history of Chapter 53 reveals very little information which is helpful in deciding whether a shotgun without a firing pin can be classified as a firearm. Statements to the effect that the National Firearms Act was intended to cover "any modern and lethal weapon" which "could be used readily and efficiently" by criminals or gangsters, while indicating a general Congressional attitude, do not deal with the precise problem now before the Court (See: U. S. Code Congressional and Administrative News 1958, p. 4395). Nor do discussions of "firearms that are not effective for use," as opposed to "serviceable firearms," deal directly with the problem.[4] As with many searches for a legislative intent, some indicia of Congressional intent can be found to support opposite positions.[5] In the absence of a clear showing of legislative intent, this Court will not take bits and pieces of a Congressional document to support a theory which hangs tenuously by a minuscule strand.

The published decisions under the National Firearms Act do not reveal a specific interpretation which would be dispositive of this indictment. The indictment itself states that a shotgun was illegally possessed by the defendants, who failed to register it. By its stipulation, the Government has conceded that this shotgun did not contain a firing pin, nor was there a firing pin found on or about the defendants when they were arrested. Such stipulation can properly be considered by this Court in determining the effect of the indictment (See: United States v. Perlstein, 3 Cir., 120 F.2d

usually kept, and place of business or employment, and, if such person is other then a natural person, the name and home address of an executive officer thereof. No person shall be required to register under this section with respect to a firearm which such person acquired by transfer or importation or which such person made, if provisions of this chapter applied to such transfer, importation, or making, as the case may be, and if the provisions which applied thereto were complied with. Aug. 16, 1954, 9:45 a. m., E.D.T., c. 736, 68A Stat. 725."

3. Title 26 U.S.C. § 5848 reads, in pertinent part, as follows:
 "For purposes of this chapter—
 "(1) Firearm—The term 'firearm' means a shotgun having a barrel or barrels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition.
 \* \* \* \* \*
 "(4) Shotgun—The term 'shotgun' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger."

4. See: "Hearings Before the Committee on Ways and Means, House of Representatives, 73rd Congress, 2d Session, on H.R. 9066," at pp. 103–104.

5. Compare "Hearings Before a Sub-Committee of the Committee on Commerce, United States Senate, 73rd Congress, 2d Session, on S. 885, S. 2258 and S. 3680," at p. 21 of S. 2258, with "Hearings Before a Sub-Committee of the Committee on Interstate and Foreign Commerce, House of Representatives, 75th Congress, 1st Session, on S. 3," at p. 5.

276; and United States v. Philippe, D.C., 173 F.Supp. 582).

Some cases have been found which deal generally with the question of what is, and what is not, a firearm. In United States v. Decker, 6 Cir., 292 F.2d 89, it was held that a "tear gas gun," as opposed to a "tear gas pencil," was a firearm within the meaning of the statute. That decision was reached after the gun had been test fired, using a .410 gauge shotgun shell which was commercial ammunition purchased on the open market. Using the test that "it was a firearm only if it could discharge a shot through the energy of an explosive," the results of the test "were that the gun fired the shot and that the firing did not rupture the barrel of the gun or cause any structural damage thereto."

 On the other hand, while a "tear gas gun" is of a nature that will propel a shot through explosive energy, by the same token it has been held that a "combination cap pistol and BB gun," which produces nothing but a "stinging sensation of temporary duration not unlike that produced by the bite of a mosquito" is not such a "weapon" as falls within the provisions of the Federal Firearms Act of 1938 [6] (Lunde Arms Corp. v. Stanford, D.C., 107 F.Supp. 450, aff'd Stanford v. Lunde Arms Corp., 9 Cir., 211 F.2d 464). It is important to note that a determination of what is and what is not a "firearm" depends in great part upon whether the particular object in question will or will not propel a shot through explosive energy. The shotgun which was found in defendants' possession does not meet this test, since it is clear that a shotgun without a firing pin cannot be fired without the aid of external objects.

Noteworthy also is the comparison between administrative regulations under the Federal Firearms Act and the National Firearms Act. Under the Federal Firearms Act, in Title 26 C.F.R. § 177.10, the term "firearm" is defined:

"Firearm. Means any weapon, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosive and a firearm muffler or firearm silencer, *or any part or parts of such weapon.*" (Emphasis added.)

The same definition is set forth as Title 15 U.S.C.A. § 901(3). Under the definition of "firearm" as set forth in § 5848 of Title 26 U.S.C., *supra,* the emphasized language does not appear. Nor was it added in 1954, when Congress revised the National Firearms Act (and specifically added new definitions to § 5848). Nor was any such addition made in 1958 or 1960, when certain other amendments were added. From the history of the Act, it is apparent that its coverage was intended to differ from that of the Federal Firearms Act, and one of the differences is the inclusion in the Federal Firearms Act of the "any part or parts" clause.

This conclusion is buttressed by United States v. Tot, D.C., 42 F.Supp. 252, aff'd 3 Cir., 131 F.2d 261, a case involving the construction of the Federal Firearms Act. The Court there noted that the "earlier National Firearm Act [of] 1934 roughly in *pari materia* was under discussion during the enactment process of the 1938 [Federal Firearms] Act." The 1938 Act originally, like the 1934 Act, contained no "part or parts" clause. These words were added later, by specific amendment. No such amendment was added to the 1934 Act, however.

Finally, an unpublished decision of the Federal District Court in and for the District of Colorado has dealt with this precise issue, upon a motion for acquittal after trial of the case. In United States v. Anderson, Crim. No. 15951

---

6. Title 15 U.S.C.A. § 901 et seq. The Federal Firearms Act is to be distinguished from the National Firearms Act, with which we are concerned, in that mere possession is sufficient to constitute a violation of the latter act. The Federal Firearms Act is concerned with the transportation of firearms in interstate or foreign commerce, rather than with the registration of firearms as such.

of the records of that Court, the defendant was indicted under the National Firearms Act, as the defendants here have been indicted. There was uncontradicted evidence that the alleged weapon was not capable of being fired without extrinsic means because the firing pin was missing. Chief Judge Knous, in granting the motion, stated that:

" * * * the gun * * * must be capable of using the energy of the explosive in the fixed shotgun shell to fire through a smooth bore * * * which necessarily implies that there be some mechanism to bring about the firing of the shotgun shell to make a firearm or a shotgun within the definition of the Statute.

* * * * * *

" * * * where the alleged weapon is so defective because of some mechanical defect in its structure that it cannot be fired * * * it does not come within the definition of a 'firearm'."

Judge Knous distinguished the situation where the gun was disassembled, so that it could be immediately put together and be in operating condition. That situation is not present in this case, inasmuch as it has been agreed that no firing pin was found in the possession of the defendants, or in the area where the arrest took place.

The Government's argument that the purpose of the National Firearms Act would be thwarted by the above-reached conclusion is unsound, because of the existence of the Federal Firearms Act and the specific provisions contained therein concerning "part or parts." It is true, as the Government contends, that there is a national interest in preventing the interstate shipment of illegal weapons by gangsters, but the Federal Firearms Act is specifically designed to cover such a situation.

The Government's attempt to characterize this weapon as an unserviceable firearm is ill-taken. It is clear that such category was intended to refer to ancient and antique weapons which were kept as hobbies, rather than to guns of the type involved here. Even by the literal language of the category, a shotgun without a firing pin is not "unserviceable." It is, at most, temporarily inoperative, and could be restored to working order by the insertion of a firing pin.

It is hornbook law that statutes, such as the one now before the Court, which seek to criminally proscribe an act, must be strictly construed against the prosecution and liberally in favor of the accused (Federal Communications Commission v. American Broadcasting Company, 347 U.S. 284, 74 S.Ct. 593, 98 L. Ed. 699; United States v. Resnick, 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127; Coughlan v. United States, 9 Cir., 216 F. 2d 324, 15 Alaska 153, and Smith v. United States, 9 Cir., 233 F.2d 744). Viewing the record now before the Court in the light of this fundamental rule, it is obvious from what has been said above in this opinion that a shotgun without a firing pin is not a "firearm" the possession of which is made illegal by Chapter 53 of Title 26 U.S.C. (The National Firearms Act). Having reached this conclusion, it follows that the indictment in this case (construed in conjunction with the Government's stipulation) fails to charge an offense and must, therefore, be dismissed.

IT IS, THEREFORE, ORDERED that the indictment returned against the defendants in this case be, and the same is, hereby dismissed;

AND IT IS FURTHER ORDERED that defendants' bail in this case be exonerated.