**UNITED STATES of America**

v.

**Robert A. WHALEN, Defendant.**

**No. 71–Cr.–686.**

United States District Court,
S. D. New York.

Jan. 21, 1972.

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, New York City, for the United States; by Howard Wilson, Asst. U. S. Atty., of counsel.

Greenspan, Aurnou, Davis & Fredericks, White Plains, N. Y., for defendant; by Joel Martin Aurnou, Barry I. Fredericks, White Plains, N. Y., of counsel.

## OPINION

CROAKE, District Judge.

This criminal action charges violations of the National Firearms Act, as amended, 26 U.S.C. §§ 5801 et seq. ("the Act"). The first eight counts of the indictment, filed on June 24, 1971, charge the possession of eight unregistered firearms, in violation of 18 [sic: 26] U.S.C. §§ 5861 (d) and 5871. The next six counts, counts nine through fourteen, charge transfer of five of these firearms, plus one other firearm, all without payment of the transfer taxes and without registration of the transfer, in violation of 18 [sic: 26] U.S.C. §§ 5811, 5812, 5841, 5861(e), and 5871. The three remaining counts, numbered fifteen through seventeen, charge transfer of the three remaining firearms listed in the first eight counts, without having made a pre-transfer application for a Treasury Department authorization, in violation of 18

[sic: 26] U.S.C. §§ 5852, 5861(e), and 5871. Transfer taxes are not alleged to be owing on these three weapons; defendant disputes, among other things, the allegations that any taxes are owing at all. The maximum punishment for the acts charged is ten years' imprisonment and a $10,000 fine on each count. 26 U.S.C. § 5871.

This is a somewhat unusual case in that the weapons involved do not appear to have been involved by their owner in other unlawful activities frequently expected of possessors of such weapons. This action, then, is not brought as a substitute for prosecution of other crimes more nefarious but also more difficult of proof; rather, it is apparently intended to enforce the Governmental regulatory and, to a lesser extent, its tax system.[1]

Defendant herein is a Korean War veteran and a policeman from 1959 through 1969 with the New York villages of Ossining and Croton. Having left those employments under honorable circumstances, he is currently in the employ of the Penn Central Railroad. He is now charged with possession and transfer, as noted above, of nine allegedly inoperable souvenir machine guns and machine pistols ("the guns"), all acquired while he was a member of the police departments, authorized and designated to possess them by his Chief of Police under the then applicable law. The illegal transfer of which he is accused was to have been in connection with a publicly advertised sale of his collection of war trophies and memorabilia, of which the guns were a part.

It is not alleged that defendant's possession of the guns was secretive at any time; in fact, two were used in 1963 at Camp Smith in upper New York State in the company of the Chief of Police and under the supervision and guidance of the FBI. When defendant left the police force, he had the barrels of the guns welded shut. (The permanence of the steel welding is apparently a disputed matter.) Several of the guns are apparently missing vital parts allegedly unobtainable by private citizens, or have damaged parts, and at least one gun fires allegedly unobtainable ammunition. Upon defendant's arrest, and a subsequent search of his home, no ammunition for these or any other weapons was discovered. In short, the presence of "gangster-type weapons" in this case is fortuitous; there is not the hint of an allegation that defendant is or was in any way associated with "gangsters." *See* U.S.Code Cong. & Admin.News 1968, p. 4434; *see also* 4412–4413.

I

Defendant has now moved to dismiss the indictment on three general grounds: that the Act does not apply to him; that, if it does, it is unconstitutional; and that, in any event, defendant's Sixth Amendment rights to a speedy trial have been infringed.

■ The first ground for dismissal is that the Act cannot be read to incriminate the activities charged. The initial argument in this regard appears to be that the guns were rendered "unserviceable"[2] under 26 U.S.C. § 5845(h) by defendant's actions on leaving the police force—the welding shut of the barrels and consequent destruction of the temper of their steel, the insertion of steel rods in the barrels, the use of other techniques to render the guns inoperable—and also, in some instances, by the absence of unobtainable vital parts or ammunition. It is then contended that the "unserviceable firearms" are neither "machine

---

1. The Act is hardly a major revenue-producer; in the fiscal year ending June 30, 1967, the revenue from its taxes amounted to $73,000, including occupational, making, and transfer taxes. Powell & Jones, Self-Incrimination and Fair Play, 18 Am.U.L.Rev. 114, 124 n. 45 (1968).

2. The relevant statutes, being too extensive for exposition in a footnote, are set forth in an appendix to this opinion.

guns," [3] 26 U.S.C. § 5845(b), nor "firearms," 26 U.S.C. § 5845(a) (6); *compare* 18 U.S.C. § 921(a) (3), 26 U.S.C. § 4181; *see* United States v. Schofer, 310 F.Supp. 1292, 1296 (E.D.N.Y. (1970), and consequently, it is contended, are not required to be registered, 26 U.S.C. §§ 5861(d), 5841(b), (c), and are freely transferable without application for authorization, 26 U.S.C. §§ 5861(e), 5812.

It may be noted in this regard that defendant cannot be heard to claim that his weapons are eligible for classification as "antique firearms" under 26 U.S.C. § 5845(g), despite their actual value primarily as archaic weapons. All are of twentieth-century manufacture, and the statutory cut-off date for inclusion in this category is the year 1898 (evidently chosen because it marks the end of the Spanish-American War).

The proper classification of the guns is additionally complicated by defendant's continued references to all of them as "De-Activated War Trophies," or "Dewats." Technically, this term refers to a category analogous to "unserviceable firearms" administratively established pursuant to

" . . . the war trophy firearms deactivation program, inaugurated in 1945 as a safety measure which would permit, under certain conditions, returning servicemen to retain war trophies and also afford the opportunity to effect the registration, and control of subsequent transfers, of deactivated firearms. Of the many thousands of war trophy firearms registered under this program, a large number were rendered unserviceable by steel welding the breach end of the barrel closed. . . . " Rev.Rul. 55–590, 1955–2 Cum.Bull. 483.

The reason for the establishment of this program was to alleviate the administrative burden of investigating the large number of annual tax-free transfers of unserviceable firearms. The method chosen was to provide for possible elimination of some firearms from the "unserviceable" firearms category:

. . . after a firearm has been transformed into a curio by the prescribed method of deactivation, *under the supervision of an inspector of the Alcohol and Tobacco Tax Division*, such article will be known as a "DEWAT" (and thereafter future transfers will not have to be separately registered). *Ibid.* [emphasis supplied.]

A later administrative ruling, Rev.Rul. 57–227, emphasized that an Internal Revenue Service inspector must witness the deactivation process in order for the weapon to qualify as a Dewat. The system eventually proved unsatisfactory, and was restricted, effective July 1, 1958, to persons lawfully possessing "unserviceable" weapons in full compliance with previously applicable registration and transfer provisions of law. Rev.Rul. 58–8, 1958–1 Cum.Bull. 690. The Regulations currently in force under the present statute do not include any procedure for Dewat classifications.

In other words, the Dewat program was an attempt by the Service to administratively repeal what it considered to be onerous statutory registration provisions applicable to transfers of unserviceable firearms occurring after initial registrations of the weapons had been effected. The initial registration requirement was always maintained; certain deactivation procedures were mandatory at all times, and the termination of the program, but not of the list of Dewat registrations maintained in the National Firearms Registration and Transfer Record ("the Registry"), 26 U.S.C. § 5841(a), has eliminated any opportunity to cure previous noncompliance with procedural requirements.

Of defendant's nine guns, the only one actually classified and registered in the Registry as a Dewat *is* the one listed in Counts 2 and 16 of the indictment. As to that weapon, the applicable regulations in force before the 1968 amendments to

---

3. This indictment differentiates between "machin guns" and "machine pistols," a distinction not present in the statute.

the statute provided that all future transfers would not have to be registered. After those statutory amendments, registration of such transfers became mandatory, as is explained below; a person who had relied upon the previous administrative assurances was thereby put in jeopardy of unwitting violation of law.

At first blush this would appear to be "unfair," and perhaps even a violation of due process. However, it has been determined that,

"The Act requires no specific intent or knowledge that the [firearms] were unregistered . . . the only knowledge required to be proved was knowledge that the instrument possessed was a firearm . . .

\* \* \* \* \* \*

" . . . This is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of [firearms] is not an innocent act." United States v. Freed, 401 U.S. 601, 607, 609, 91 S.Ct. 1112, 1117, 28 L.Ed. 2d 356 (1971).

It would therefore appear that proof at trial of good faith reliance upon the administrative assurances quoted above might be sufficient to negate requisite knowledge that the Dewat possessed was a firearm within the meaning of the amended Act.

If the requisite knowledge were proved, however, there would be no constitutional *ex post facto* problems present merely because of the enactment of the 1968 amendments. Those amendments clearly apply only to transfers occurring after their effective date. In addition, the amendatory legislation provides a one-month amnesty period during which time contraband weapons may be registered without penalty; Pub.L. No. 90–618 § 207, 82 Stat. 1227. Furthermore, 26 U.S.C. § 5848 prohibits the use of registration information in the prosecution of previous or concurrent offenses. The indictment is therefore sufficient as to this weapon.

In any event, the existence of a Dewat classification category is of no assistance to defendant with regard to the eight guns not so classified. Even if it be accepted that they were deactivated in accordance with Dewat technical specifications, no IRS Inspector was present to witness the event. They may therefore be considered Dewats in some colloquial sense of the term, but not in its rigorous sense. As to these eight guns, all applicable statutory registration and transfer provisions remain unabated and not complied with, as explained below.

Defendant apparently reads the statute as exempting all "unserviceable" weapons which, whether or not they are Dewats, would not be "machineguns," from the otherwise applicable transfer registration and tax provisions. His contention is erroneous; a determination of unserviceability serves merely to exempt a transfer from tax liability; all registration provisions remain in force and applicable.

The only weapons not "firearms" under the Act are "collector's items." Machineguns, however, whatever their status may be in the marketplace, are always "firearms," not "collector's items." 26 U.S.C. § 5845(a). It is defendant's contention that his guns, although called machineguns in common parlance, are not such under the Act. If it be assumed that his guns are actually unserviceable, and if this is equivalent to "[in]capab[ility] of being readily restored to shoot" or "[lack of] a combination of parts from which a machinegun can be assembled if such parts are in the possession, or under the control of a person," or "[something less than] frame[s] or receiver[s]," then they would not be "machineguns"; 26 U.S.C. § 5845(b). The question would then become whether defendant's nonmachinegun, unserviceable firearms are fully registrable.

The answer must be that the registration provisions, 26 U.S.C. § 5841, which speak in broad language of "firearms" generally, must be read as including all firearms, whether or not antiques, unserviceable, Dewats, or in the possession

of peace officers. *See* 26 C.F.R. 179.106. Presumably the reason for this breadth of inclusion was the felt necessity for keeping a record not only of all operating or repairable machineguns, but also of all possible sources of parts for repairs and for conversions of manual weapons into machineguns. The drafters may have been worried about the ability of skilled gunsmiths and machinists to rehabilitate "unserviceable" machineguns. *See* S. Rep. No. 1501, 90th Cong. 2d Sess. 50–51 (1968); *see also* 26 U.S.C. § 5842; *cf., e. g.*, United States v. Lauchli, 371 F.2d 303 (7th Cir. 1966).

Defendant's guns were therefore required to be registered, and notice of transfer was mandatory. This conclusion might have been capable of easier determination had the statute been drafted to explicitly include, not only the eight weapon types listed, but also the descriptive categories of firearms within the definition of firearms;[4] but the complexity of the statute does not divert its clear intent that unserviceable firearms comprise a subclass of "firearms," not an exception to its general rule.

The statutory system was substantially the same under the prior version of the law, in force before the 1968 amendments. However, inartful drafting of the previous statute did lead to the possible impression that unserviceable firearms were neither taxable nor registrable. Former 26 U.S.C. § 5812(a) did state that "This chapter shall not apply to the transfer of firearms [to certain peace officers or whenever the weapons are considered to be unserviceable]." However, subsection (b) of that section corrected

the false impression by requiring the giving of notice of transactions exempted under subsection (a), i. e., "registering" them. Furthermore, former 26 U.S.C. § 5848 draws no distinction in its definition of "firearm" between serviceable and unserviceable machineguns. *But see* 26 U.S.C. § 5845 (1968), United States v. Thompson, 202 F.Supp. 503, 506 (N.D. Cal.1962). Therefore, the reference to "firearms" in the registration sections, former 26 U.S.C. §§ 5814 and 5841, as well as 5812(b), includes all machineguns. *But see* United States v. Thompson, *supra*.

The conclusion must be that despite revisions in language, and despite considerable ambiguity in the statutes themselves, both the present and the previous statute require registration of all defendant's machineguns. Therefore, as to the eight guns named in the first eight counts, the indictment will withstand a challenge to the necessity of their registration, even assuming their unserviceability in fact. As to the ninth gun only, listed as improperly transferred in Count 14 of the indictment, it is conceded that this firearm was otherwise correctly registered as one owned by defendant. *See* 26 U.S.C. § 5841(d).

There is another difficulty with the argument that defendant's "unserviceable" firearms need not have been registered, and that is that it improperly presupposes the insufficiency of the Government's evidence of serviceability. On a motion to dismiss the indictment, the facts stated therein and factual conclusions therefrom must be accepted as true. Rule 12(b) (1), Fed.R.Crim.P.;

---

4. It should be noted in this regard that, while neither the Act, as amended, nor the regulations currently in force thereunder specifically include Dewats within the categories "firearms" or "unserviceable firearms," the explanatory instructions appended to Form 4467, "[Initial] Registration of Certain Firearms during November of 1968 [the amnesty period]," does state at paragraph 5(A), that the term machinegun includes " 'unserviceable' machineguns as well as machine guns previously determined to be 'DEWATS.' " Of course, this is misleading in that it infers that unserviceable machineguns are machineguns for all purposes, which they are not. It is accurate if read with the implied addition, "for purposes of this form—i. e., initial registration, and for transfer registration as well, but not for tax purposes." As thus restricted, the instructions evidence the Service's opinion that unserviceable firearms and Dewats are both "firearms" for registration purposes. Paragraph 5(B) of these instructions specifically includes "unserviceable" as a category of firearms.

*see, e. g.,* United States v. Fargas, 267 F.Supp. 452, 455 (S.D.N.Y.1967); 1 Wright, Federal Practice and Procedure, § 191. The Government has alleged that six of the nine guns were in fact repairable, and consequently were not "unserviceable" within the meaning of the statute, 26 U.S.C. § 5845(h). This contention must be accepted as true for purposes of this motion. As to the other three guns, one was classified as a Dewat, as noted above. It is apparently conceded that the other two guns were also unserviceable.

This in no way means that the Government's burden of proof at trial would be satisfied by proof of its present allegations. At trial the Government will be obliged to prove, not only that its experts, working with all the Government's resources, were able to repair the guns, but also that defendant himself would have been able to have the weapons "readily restored to a firing condition." § 5845(h), *supra.*

▮ The second theory urged as part of the branch of the motion grounded upon the statute's alleged failure to reach defendant's activities, is that the uncontroverted facts conclusively demonstrate that no "transfer" ever took place within the meaning of 26 U.S.C. § 5845(j), and therefore that 26 U.S.C. §§ 5811 and 5812 are inapplicable.

In this regard, defendant relates the following "uncontroverted" circumstances surrounding his arrest. Defendant alleges that the two arresting Treasury agents, posing as war memorabilia collectors, first inquired about the purchase price for defendant's weapon collection. They were told that the guns would not be sold except as part of the entire collection. When requests for interstate shipment of the guns were refused, *see* 26 U.S.C. § 5861(j), *see also* United States v. Bass, 1971, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488, they later appeared at defendant's home on the evening of February 6, 1970. There, after some preliminary conversations, and the offer of some beer, one of the agents handed the cash amount of the purchase demand to defendant, saying, "Count it." Defendant claims that he was arrested before being given any opportunity to condition his acceptance of the money, if counting it constituted acceptance, upon payment of any tax liability and upon filing of the necessary application for transfer, authorization (i. e., registration). His conclusion is that no "transfer" ever took place.[5]

This argument suffers from the same defect as the previous one: it raises evidentiary issues which are clearly premature on a motion to dismiss. The credibility of defendant *vis a vis* the agents must be evaluated at least in the first instance by the trier of facts. Again, this is in no way to suggest that the Government's present version of what transpired at defendant's home would withstand attack at trial; in this regard, it is merely noted that the Government would put into defendant's mouth the suggestion that the proposed transferees of the collection avoid applicable registration and tax provisions by later "telling the authorities that they had held them [the guns] for a long time" (Wilson affidavit, ¶ 11), when at the same time defendant knew that one of the guns was currently registered to him.

## II

▮ Defendant's other contentions may be more summarily disposed of. His second general argument is that the Act, if read as applicable to his activities, as it has, is unconstitutional, either because it is void for vagueness or because it violates his privilege against self-incrimination.

Both these questions have been determined adversely to defendant. As to against a charge of vagueness, the Act

---

5. The Court does not reach the issue of whether an attempted transfer would be illegal. The present indictment charges an actual completed transfer; that is therefore what must be proved.

as it existed prior to the 1968 amendments was upheld with the comment,

"At the argument defendant also attacked the vagueness of the term 'unserviceable' in the exemption provision . . . Certainly the definition clauses involved herein are not void for vagueness, for they provide 'sufficient warning' of the purview of the statute. United States v. National Dairy Products Corp., 372 U.S. 29, 33, 83 S.Ct. 594, 9 L.Ed.2d 561. Defendant has cited no cases in which statutory complexity has been held to create a constitutional infirmity . ." United States v. Lauchli, *supra*, 371 F. 2d at 313.

While the Act in its present form may be even more complex, it is certainly less ambiguous and misleading than it was in 1966. A fortiori, it is not infirm for vagueness.

■ Defendant also claims that the Act is violative of his Fifth Amendment privilege against self-incrimination. Former 26 U.S.C. § 5841 as it interrelated with § 5851, was struck down on this ground by Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), but the amended Act has been upheld in United States v. Freed, *supra*, 401 U.S. at 605–607, 91 S.Ct. 1112, 28 L.Ed. 356. *See also* United States v. Valentine, 427 F.2d 1344, 1346–1347 (8th Cir. 1970); *cf.* Desimone v. United States, 423 F.2d 576, 581–582 (2d Cir. 1970), cert. denied sub nom. DeSimone, 400 U.S. 842, 91 S.Ct. 84, 27 L.Ed.2d 77 (1970) (§ 5821 of pre-1968 Act upheld).

■ Defendant's third ground for dismissal relates to the existence of a 17-month delay between arrest and indictment, only seven months of which were apparently taken up with investigations by Treasury agents, conferences with the defense attorney, and the like; the case lay dormant for a minimum of ten months.

The indictment was, however, obtained well within the limitations period. No request for an immediate trial was ever presented. The only specific prejudice alleged—possible diminution of memory from lapse of time—is insufficient to remove this case from the rule of United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, et seq. *See* particularly footnote 8, 404 U.S. at 315, 92 S.Ct. at 460, and cases therein cited. No constitutional claim is therefore presented; in so far as Rule 48(b), Fed.R. Cr.P. allows the Court the discretionary power to dismiss for delay, *see* 3 Wright, *supra*, § 814, the Court in its discretion denies the motion.

Accordingly, defendant's motion to dismiss the indictment is denied in all respects.

So ordered.

## APPENDIX

26 U.S.C. § 5845 states in material part as follows:

*Definitions*

For the purpose of this chapter—

(a) *Firearm.*—The term "firearm" means . . . (6) a machinegun; . . . . The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary or his delegate finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

(b) *Machinegun.*—The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any combination of parts designed and intended for use in converting a weapon into a machinegun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or control of a person.

(g) *Antique firearm.* — [firearms manufactured in or before 1898 or

replicas thereof or using ammunition manufactured in or before 1898 and no longer manufactured or available.]

(h) *Unserviceable firearm.*—The term "unserviceable firearm" means a firearm which is incapable of discharging a shot by means of an explosive and incapable of being readily restored to a firing condition.

(j) *Transfer.*—The term "transfer" and the various derivatives of such word, shall include selling, assigning, pledging, leasing, loaning, giving away, or otherwise disposing of.

Section 5861. *Prohibited acts.*

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; . .

Section 5812. *Transfers.*

(a) *Application.*—A firearm shall not be transferred unless (1) the transferor of the firearm has filed with the Secretary or his delegate a written application . . . . (2) any tax payable on the transfer is paid . . .

Section 5811. *Transfer tax*

(a) *Rate.*—There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred . . .

(b) *By whom paid.*—The tax . . . shall be paid by the transferor.

Section 5852. *General transfer and making tax exemption.*

(e) *Unserviceable firearms.*—An unserviceable firearm may be transferred as a curio or ornament without payment of the transfer tax imposed by section 5811, under such requirements as the Secretary or his delegate may by regulations prescribe.

Section 5841. *Registration of firearms.*

(a) *Central registry.*—The Secretary or his delegate shall maintain a central registry of all firearms . . . known as the National Firearms Registration and Transfer Record . . .

(b) *By whom registered.*— . . . Each firearm transferred shall be registered to the transferee by the transferor.

(c) *How registered.*— . . . Each . . . transferor of a firearm shall, prior to . . . transferring a firearm, obtain authorization in such manner as required by this chapter or regulations thereunder to . . . transfer the firearm, and such authorization shall effect the registration of the firearm required by this section.

(d) *Firearms registered on effective date of this act.* [November 1, 1968] (A person possessing such a firearm shall be considered to have registered same.)

Former § 5812 (repealed 1968) stated:

*Exemptions.*

(a) *Transfers Exempt.*—This chapter shall not apply to the transfer of firearms—

(2) to any peace officer or any Federal officer designated by regulations of the Secretary or his delegate;

(3) to the transfer of any firearm which is unserviceable and which is transferred as a curiosity or ornament.

(b) *Notice of exemption.*—If the transfer of a firearm is exempted as provided in subsection (a), the person transferring such firearm shall notify the Secretary or his delegate of the name and address of the applicant.

. . . .

Former § 5814 stated:

*Order forms.*

(a) *General requirements.*—It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued . . . by the Secretary

. . .

Former § 5841 stated:

*Registration of persons in general.*

Every person possessing a firearm shall register, with the Secretary . . No person shall be required to register under this section with respect to a

firearm which such person acquired by transfer . . . if provisions of this chapter applied to such transfer . . and if the provisions which applied thereto were complied with.

Former § 5848 stated:

*Definitions.*

*For purposes of this chapter—*

(1) *Firearm.*—The term "firearm" means . . . a machine gun . .

(2) *Machine gun.*—The term "machine gun" means any weapon which shoots, or is designed to shoot, automatically or semi-automatically, more than one shot, without manual reloading, by a single function of the trigger.

Former Section 5851 stated:

*Possessing firearms illegally.*

It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of [former sections 5811, et seq.], or which has not been registered as required by [former § 5841] . .