**UNITED STATES of America,
Plaintiff,**

**v.**

**Dwayne O. ANDREAS and First Interoceanic Corporation, a/k/a Independent Bancorporation, Defendants.**

**No. 4–73–Cr. 201.**

United States District Court,
D. Minnesota,
Fourth Division.

March 11, 1974.

---

404

Robert J. Renner, U. S. Atty., Thorwald H. Anderson, Asst. U. S. Atty., Minneapolis, Minn., Charles Ruff, Asst. Special Prosecutor Watergate Special Prosecution Force, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Patrick J. O'Connor and Joe A. Walters, O'Connor & Hannan, Minneapolis, Minn., Edward Bennett Williams, Williams, Connolly & Califano, Washington, D. C., for defendants.

## MEMORANDUM ORDER

LARSON, District Judge.

Before the Court are motions by defendants Dwayne O. Andreas and First Interoceanic Corporation to dismiss an eight count Information filed by Watergate Special Prosecutor Archibald Cox on October 19, 1973. The Information charges First Interoceanic Corporation with four counts of illegal contributions to the Humphrey presidential campaign of 1968. The Information further charges Dwayne O. Andreas as an officer of the corporation with illegally consenting to the contributions set forth in

each of the four counts against the corporation. All eight counts of the information are based upon 18 U.S.C. § 610.[1] Defendants have moved to dismiss the information on the grounds that the statute of limitations governing the offenses charged has run and that the Information exceeds the authority of the Watergate Special Prosecutor.

A. *The Statute of Limitations.*

■ The applicable statute of limitations, 18 U.S.C. § 3282 (1970), provides:

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."[2]

The thrust of defendants' argument is that the four twenty-five thousand dollar checks were dated, mailed, received and accepted, cashed or deposited, and cleared, on or before October 18, 1968. Since the information was filed on October 19, 1973, defendants contend that the time limit within which a prosecution can be brought has been exceeded by one day and the prosecution is barred. Defendants have offered, in support of their argument, the affidavit of Ronald L. Frykholm, an employee of the National City Bank of Minneapolis, Minnesota, to support their contention that the contributions were made and

---

1. 18 U.S.C. § 610 (Supp. II, 1972) amending 18 U.S.C. § 610 (1970), reads in part:
"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.
"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, and any person who accepts or receives any contribution, in violation of this section, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if the violation was willful, shall be fined not more than $10,000 or imprisoned not more than two years, or both.
\* \* \* \* \*
"As used in this section, the phrase 'contribution or expenditure' shall include any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, or any services, or anything of value (except a loan of money by a national or State bank made in accordance with the applicable banking laws and regulations and in the ordinary course of business) to any candidate, campaign committee, or political party or organization, in connection with any election to any of the offices referred to in this section; but shall not include communications by a corporation to its stockholders and their families or by a labor organization to its members and their families on any subject; nonpartisan registration and get-out-the-vote campaigns by a corporation aimed at its stockholders and their families, or by a labor organization aimed at its members and their families; the establishment, administration, and solicitation of contributions to a separate segregated fund to be utilized for political purposes by a corporation or labor organization: *Provided*, That it shall be unlawful for such a fund to make a contribution or expenditure by utilizing money or anything of value secured by physical force, job discrimination, financial reprisals, or the threat of force, job discrimination, or financial reprisal; or by dues, fees, or other monies required as a condition of membership in a labor organization or as a condition of employment, or by monies obtained in any commercial transaction."

2. The question of whether the offense is barred is appropriately raised by the motion to dismiss the Information. Jaben v. United States, 333 F.2d 535, 538 (8th Cir. 1964), aff'd 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965), rehearing denied, 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed.2d 114 (1965).

completed not later than October 18, 1968.

 Any attack on the sufficiency of an Information must be considered by this Court by taking the allegations of the Information as true.[3] The Information charges that the offenses took place from on or about October 14, 1968, to on or about October 21, 1968, thus bringing the offenses charged within the time allowed by the statute of limitations. If the Court looks only to the face of the Information, defendants' objections are entirely met. Defendants, however, point to that portion of Federal Rule of Criminal Procedure 12(b)(4) which allows for the use of affidavits to determine issues raised by a motion to dismiss.[4] Defendants cite United States v. J. R. Watkins Co., 16 F.R.D. 229 (D. Minn.1954), in which Judge Nordbye considered materials external to the Information and made a determination of the statute of limitations question in that case prior to trial. The Court determined that:

> "It would be injudicious to ignore the information obtainable from the face of the reports in issue when determining whether the one upon which the indictment was based was or was not barred by lapse of time. Such an examination would not seek to contradict the well-pleaded material allegations of the complaint, for defendants do not dispute that the report relied upon by the Government was returned [within the limitations period], but seek to explain why the said report

cannot be the basis for this prosecution." 16 F.R.D. at 233.

By their affidavit in the instant case, however, defendants would seek to contradict the allegations of the Information by attempting to prove that the contributions, if any, took place prior to October 19, 1968. Such an attempt is impermissible here because, as will be detailed *infra,* the introduction of proof concerning the statute of limitations would necessarily open the central issues before this Court to a trial by affidavit prior to the trial itself. *See* United States v. Entin, 206 F.Supp. 84, 85 (S.D. N.Y.1962); 1 Wright, Federal Practice and Procedure: Criminal § 194, at 413 (1969).

In United States v. Covington, 395 U. S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969), the Court stated:

> "Federal Rule of Criminal Procedure 12(b)(1) states that: 'Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.' A defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Rule 12(b)(4) allows the District Court in its discretion to postpone determination of the motion to trial, and permits factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion."

Where, however, the questions of fact relating to the motion to dismiss are in-

---

**3.** While this generalization has not normally arisen in connection with statute of limitation questions, *see e. g.,* United States v. Sampson, 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); Boyce Motor Lines v. United States, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 96 L.Ed. 367 (1951); United States v. Whalen, 337 F.Supp. 1012, 1018 (S.D.N.Y.1971), it has been applied when the defendant has attempted to refute allegations of the date upon which offenses were to have occurred. *See* United States v. Tolub, 187 F.Supp. 705, 709 (S.D.N.Y.1960); United States v. J. R. Watkins Co., 16 F.R. D. 229, 233 (D.Minn.1954). *See also* 1

Wright, Federal Practice and Procedure: Criminal § 194, at 412 (1969).

**4.** Rule 12(b)(4) provides:
 "A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue. An issue of fact shall be tried by a jury if a jury trial is required under the Constitution or an act of Congress. All other issues of fact shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct."

tertwined with considerations of issues going to the merits of the case, the questions must be deferred until presentation at trial. United States v. Knox, 396 U.S. 77, 83, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); United States v. Callahan, 300 F.Supp. 519, 522 (S.D.N.Y.1966); United States v. Fargas, 267 F.Supp. 452, 455 (S.D.N.Y.1967); United States v. Guterma, 189 F.Supp. 265, 272 (S.D.N.Y.1960); United States v. Tolub, 187 F.Supp. 705, 709 (S.D.N.Y.1960).[5] Under 18 U.S.C. § 610, the elements of the offense charged regarding Interoceanic include (1) the making of a contribution or expenditure, (2) by a corporation, (3) "in connection with any election at which Presidential and Vice Presidential electors . . . are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices . . . ." Cf. United States v. Boyle, 482 F.2d 755, 760 (D.C.Cir. 1973); United States v. Pipefitters Local Union No. 562, 434 F.2d 1116, 1121 (8th Cir. 1970), rev'd on other grounds 407 U.S. 385, 92 S.Ct. 2247, 33 L.Ed.2d 11 (1972). The offenses charged against Andreas involve his consent to such expenditures.

■ Because of the nature of the transaction alleged to have taken place in this case, the issue of *when* the contributions occurred appears to be inextricably woven with *if* and *how* the contributions occurred. Copies of the checks in question appended to the Government's Response to Defendants' Motion For Bill Of Particulars, filed January 21, 1974, indicate that the checks were apparently drawn upon the account of Dwayne O. Andreas; they were not drawn upon the corporate account of First Interoceanic Corporation. The statute clearly prohibits contributions by corporations; it does not prohibit contributions by individuals. To prove the allegations of the Information at trial, the focus must turn to when, if at all, illegal transfers were made between First Interoceanic Corporation and Andreas. While this Court agrees with defendants that the transactions between the drawer and the drawee were complete at the latest when the checks cleared the payee bank, this Court cannot agree that the offenses charged in the Information were necessarily complete at that time. Similarly, the issue of Andreas' consent to the corporate transfer goes to the factual question of whether Andreas did consent to the transfer of corporate money (rather than his own) to the campaign and, if so, when such consent took place. Defendants' protestations notwithstanding, Andreas' consent to allow the corporation to reimburse him for theretofore personal contributions may well have taken place after the date the checks had cleared the payee bank. To even attempt at this stage of the proceeding to differentiate between the various alleged payments or to determine that the four checks constituted an integrated scheme to make illegal corporate contributions for political purposes would be premature. These matters are part of the general issue which can be properly resolved only after the presentation of evidence at trial, not upon pretrial motions.

■ Defendants also contend that not to find the clearing of the checks to be the final date upon which a transfer could have taken place between the corporation and the campaign is to confer upon the activities charged in the Information the status of being a continuing offense of the type condemned in Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). This Court is aware that the Government has not alleged that Andreas or the corporation through its officers conspired to make contributions in violation of 18 U.

---

5. *See also* 1 Wright, Federal Practice and Procedure: Criminal § 193, at 411 (1969): "If the charge is, for example, perjury, alleged to have occurred on a particular date, the matter can be disposed of on the motion before trial. If, however, factual matters are involved, such as when a conspiracy ended or when an offense was consummated, the limitations question should be put off until the trial."

S.C. § 610. It is equally clear, however, that the offense charged is not one that is continuing in nature beyond that date on which the overt acts were completed. The statute of limitations begins to run when the crime is complete. Toussie v. United States, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L.Ed.2d 156 (1970); Pendergast v. United States, 317 U.S. 412, 418, 63 S.Ct. 268, 87 L.Ed. 368 (1943). But as this Court's discussion above indicates, the date when the contributions by the corporation were complete, if any corporate contributions were made, is not clear and must be determined at trial.

Based upon the foregoing analysis, therefore, this Court is unable to grant defendants' motion to dismiss the Information as being barred by the statute of limitations. While the offense charged is not of the continuing nature disapproved of by *Toussie*, the information presently before the Court is insufficient to establish when the corporate contributions, if any, took place. The fact of such contributions, as well as the circumstances and time of said contributions, are all factors which present genuine issues of material facts and are necessarily left to a trial of the general issue—they go to the very foundation of the prosecution. *Accord*, United States v. J. R. Watkins Co., 16 F.R.D. 229, 234–235 (D.Minn.1954).

B. *Authority of the Watergate Special Prosecutor.*

■ There is no question in this case that the Information filed on October 19, 1973, was signed by Watergate Special Prosecutor Cox pursuant to what the Government contends was a valid as-

signment of the case to the Special Prosecutor by Attorney General Richardson. Defendants contend, however, that Cox's signature on the Information does not satisfy Federal Rule of Criminal Procedure 7(c)(1) which provides that an Information "shall be signed by the attorney for the government." Rule 54(c) defines an "attorney for the government" as "the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney . . . ." The Regulation setting forth the creation of the Office of Watergate Special Prosecution Force, 28 C.F.R. § 0.37 (1973), specified that the office be headed by the Special Prosecutor who was to be given broad authority with the power to, *inter alia*, initiate and conduct prosecutions, frame indictments, file informations, and handle all aspects of cases falling within his jurisdiction. Section 0.37 made clear, however, that the newly created office and its Director were still an operational segment of the Department of Justice, with the Attorney General being held accountable for all actions to be taken by the Force.

> "In exercising this authority, the Special Prosecutor will have the greatest degree of independence that is consistent with the Attorney General's statutory accountability for all matters falling within the jurisdiction of the Department of Justice."[6]

As pointed out in the *1973 Hearings* at 214–15 and set forth in § 0.37, some matters, such as approval for grants of immunity, may require that officers other than the Special Prosecutor give ap-

---

**6.** In numerous portions of the Hearings on the Nomination of Elliot L. Richardson to be Attorney General Before the Senate Comm. on the Judiciary, 93rd Cong., 1st Sess., (1973) [hereinafter cited as *1973 Hearings*], references were made to the retention of ultimate authority by the Attorney General concerning the Special Prosecutor's investigations and prosecutions. *See, e. g., 1973 Hearings* at 5–7, 36–37, 69, 117, 131, 132–33, 177, 213, and 215. While these references

may not be exhaustive of all such references found in the hearings, they confirm the general framework of the final accountability of the Attorney General for the Office of the Special Prosecutor. At the same time, the references by no means detract from the full degree of authority and independence provided for the Special Prosecutor in the Regulation and indicated elsewhere in the testimony before the Senate Committee.

proval for such immunity.[7] In addition, § 0.37 specifies that the Special Prosecution Force will be subject to the administrative regulations and policies of the Department of Justice. As a branch, therefore, of the Department of Justice, albeit with the utmost statutorily permissible independence from the Attorney General, the Special Prosecutor was an officer of the Department of Justice, and, for the purposes of Rules 7(c)(1) and 54(c), an "authorized assistant of the Attorney General."

■ 28 U.S.C. § 515(a)(1970) provides an additional basis for the authority of the Watergate Special Prosecutor to sign the Information as an attorney for the Government within Rule 7(c)(1). Section 515(a) provides:

> "The Attorney General or any other officer of the Department of Justice, . . . may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal . . . which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."[8]

Pursuant to the letter from Attorney General Richardson to Special Prosecutor Cox dated September 28, 1973, specific direction was given by the Attorney General to the Special Prosecutor to proceed with matters presently before this Court. Since it is clear under Rules 7(c)(1) and 54(c) that a United States Attorney is authorized to file informations, under § 515(a), as an officer of the Department of Justice, the Special Prosecutor may likewise file informations pursuant to the conduct of criminal legal proceedings.[9]

■ Defendants also urge that when the Office of Watergate Special Prosecution Force was abolished on October 21, 1973, and Special Prosecutor Cox discharged, all pending court proceedings initiated by the Special Prosecutor were abated. This Court cannot agree. Pursuant to 28 C.F.R. § 0.37 (1973) the Special Prosecutor was empowered to handle all aspects of any cases within his jurisdiction that were initiated before or after the assumption of his duties. To now rule that his dismissal abated actions which he initiated would create the unseemly situation where certain actions initiated before the Office was created could be shuttled back to the Criminal Division, whereas those actions begun by Mr. Cox as an officer of the Department of Justice before what is

---

7. *See* 18 U.S.C.A. § 6003(b) (1973 Supp.) indicating that the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General may approve United States Attorneys' requests for grants of immunity for particular witnesses. This Court takes no position upon whether the Special Prosecutor would be a "designated Assistant Attorney General" for purposes of § 6003(b), but *notes that a "designated Assistant Attorney General" is not necessarily the same as "an authorized assistant of the Attorney General"* as specified in Rule 54(c).

8. The provisions of § 515(a) were directly incorporated into the designation of specific functions of the Special Prosecutor in 38 Fed.Reg. 21404 (1973).

9. In United States v. Hall, 145 F.2d 781, 785 (9th Cir. 1944), cert. denied, 324 U.S. 871, 65 S.Ct. 1016, 89 L.Ed. 1425 (1944), the Court held that the precursor to 28 U.S.C. § 515(a) conferred substantial powers upon an officer of the Department of Justice:

> "It seems to us and we hold that § 310 of Title 5 U.S.C.A. authorizes the Attorney General to institute litigation, to enter into pending litigation, and to cooperate with the district attorney or to proceed to handle such litigation independent of the district attorney, and any officer of the Department of Justice may act in the same manner and to the same extent *providing he is authorized so to do by the Attorney General*."

Similarly, Judge Nordbye in United States v. Morton Salt Co., 216 F.Supp. 250, 255 (D. Minn.1962), aff'd per curiam 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1965), held:

> "It must be apparent that this section vests the authorized officers of the Department of Justice assigned to a District with the same authority as the United States Attorney for that District. Their powers are coterminous."

*Cf.* Wall v. United States, 384 F.2d 758, 762–763 (10 Cir. 1967).

now ingloriously known as the "Saturday Night Massacre" would be a nullity. Such a result finds support in neither law nor logic. In addition, the regulation abolishing the Office of Watergate Special Prosecution Force, 38 Fed.Reg. 29466 (1973), specifies that "[t]he functions of that Office revert to the Criminal Division." "Functions" of the Special Prosecution Force had earlier been clarified in 38 Fed.Reg. 21404 (1973) to include the conduct of any kind of criminal legal proceedings which United States Attorneys are authorized to conduct. The conduct of criminal proceedings would necessarily include the institution of proceedings through Information or Indictment and the reversion of such "functions" to the Criminal Division would carry with it all actions begun under § 0.37.

▮▮▮ The above observations centering upon abatement of the instant action, of course, assume that the Office was effectively terminated by order of Acting Attorney General Bork on October 23, 1973. Judge Gesell in his well reasoned opinion of Nader v. Bork, 366 F.Supp. 104 (D.D.C.1973), however, ruled that the discharge of Special Prosecutor Cox and the temporary abolition of the Office of Special Prosecutor were void:

> "Defendant suggests that, even if Mr. Cox's discharge had been unlawful on October 20, the subsequent abolition of the Office of Watergate Special Prosecutor was legal and effectively discharged Mr. Cox at that time. This contention is also without merit. It is true that an agency has wide discretion in amending or revoking its regulations. United States v. O'Brien, 391 U.S. 367, 380, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). However, we are once again confronted with a situation in which the Attorney General voluntarily limited his otherwise broad authority. The instant regulation contains within its own terms a provision that the Watergate Special Prosecutor (as opposed to any particular occupant of that office) will continue to carry out his responsibilities until he consents to the termination of that assignment. [Citation omitted.] This clause can only be read as a bar to the total abolition of the Office of Watergate Special Prosecutor without the Special Prosecutor's consent, and the Court sees no reason why the Attorney General cannot by regulation impose such a limitation upon himself and his successors.

> "Even if the Court were to hold otherwise, however, it could not conclude that the defendant's Order of October 23 revoking the regulation was legal. An agency's power to revoke its regulations is not unlimited—such action must be neither arbitrary nor unreasonable. Kelly v. United States Dept. of Interior, 339 F.Supp. 1095, 1100 (E.D.Cal.1972). Cf. Grain Elevator, Flour and Feed Mill Workers v. N. L. R. B., 126 U.S. App.D.C. 219, 376 F.2d 774, cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L. Ed.2d 285 (1967); Morrison Mill Co. v. Freeman, 124 U.S.App.D.C. 334, 365 F.2d 525 (1966), cert. denied, 385 U.S. 1024, 87 S.Ct. 741, 17 L.Ed.2d 672 (1967). In the instant case, the defendant abolished the Office of Watergate Special Prosecutor on October 23, and reinstated it less than three weeks later under a virtually identical regulation. [Citation omitted.] It is clear that this turnabout was simply a ruse to permit the discharge of Mr. Cox without otherwise affecting the Office of the Special Prosecutor—a result which could not legally have been accomplished while the regulation was in effect under the circumstances presented in this case. Defendant's Order revoking the original regulation was therefore arbitrary and unreasonable, and must be held to have been without force or effect." 366 F.Supp. at 108–109.

This Court concurs in Judge Gesell's opinion.

▮▮▮ Defendants finally argue that pursuant to 28 C.F.R. § 0.37 (1973), the

Special Prosecutor had no jurisdiction to go into any matters not in some way connected with the Watergate break-in; the 1972 Presidential Campaign; or the President, his appointees, and members of his staff. Section 0.37 provides in part:

"The Special Prosecutor shall have full authority for investigating and prosecuting offenses against the United States arising out of the unauthorized entry in Democratic National Committee headquarters at the Watergate, all offenses arising out of the 1972 Presidential election for which the Special Prosecutor deems it necessary and appropriate to assume responsibility, allegations involving the President, members of the White House staff, or Presidential appointees, and any other matters which he consents to have assigned to him by the Attorney General."

There is no question that the genesis of the Office of Watergate Special Prosecution Force was the sequence of occurrences specifically referred to in § 0.37. The *1973 Hearings*, during which the scope of the Special Prosecutor's duties was defined, frequently refer to the first three areas of inquiry set forth in that part of § 0.37 quoted above.[10] It is equally clear from the hearings, however, that the Special Prosecutor was given wide latitude to determine which cases he chose to investigate and prosecute.[11] In referring specifically to campaign violations, Secretary Richardson pointed out that while a large portion of reported campaign violations would remain within the jurisdiction of the Criminal Division of the Department of Justice,[12] the particular cases that the Special Prosecutor would choose to handle might involve discussions between the Special Prosecutor's office and the Criminal Division,[13] and, in any event,

the Special Prosecutor would be finally responsible for deciding which cases he would assume.[14]

Defendants would have this Court interpret "and any other matters which he consents to have assigned to him by the Attorney General" narrowly to include only those matters which could result in a conflict of interests at the present time between the prosecution of certain violations of the law and the interests of the present administration in not having such prosecutions go forward. Defendants' interpretation of this portion of § 0.37 is an unacceptably restrictive reading of an otherwise facially unambiguous clause. In addition, while Attorney General Richardson, in his letter to Special Prosecutor Cox, recognized that violations in 1968 would not *normally* fall within the Special Prosecutor's jurisdiction, Cox's acceptance of the case was appropriate since the potential violations of the law had been discovered in an investigation clearly within the Special Prosecutor's jurisdiction and involved individuals otherwise in the focus of the Special Prosecutor's investigation.[15] It is this type of situation which appeared to be within the contemplation of Secretary Richardson when he testified at the hearings that:

"Secretary RICHARDSON. Yes. There would be some areas of potential overlap or some cases where it might be necessary to decide who had the responsibility—for instance, some new case on campaign contributions, if one arose. They might have to get together on whether or not this should be turned over to the special prosecutor because it in some way related to other cases he had, or whether it should be considered to be, in effect, an 'ordinary' case falling within the normal jurisdiction of the Criminal Division." *1973 Hearings* at 77.

10. *1973 Hearings* at 36, 42, 44, 58, 100–101, 112, 116, 154–55.

11. *Id.* at 5, 112.

12. *Id.* at 17, 42.

13. *Id.* at 17, 77.

14. *Id.* at 112, 153–55.

15. Letter from Attorney General Elliot Richardson to Special Prosecutor Archibald Cox, September 28, 1973.

The jurisdiction for the Special Prosecutor's functions was carved out of the area of responsibility previously assigned to the Assistant Attorney General in charge of the Criminal Division.[16] Pursuant to 5 U.S.C. § 552(a)(1) (1970)[17] and 5 U.S.C. § 301 (1970), the original assignment of functions to the Criminal Division was published in the Federal Register,[18] as was the creation of the Office of Watergate Special Prosecution Force.[19] Defendants argue that Attorney General Richardson's letter to Special Prosecutor Cox was an invalid assignment of authority because it correspondingly decreased the jurisdiction of the Criminal Division of the Department of Justice and did so without a published regulation. Initially, it is clear that the Regulation transferring duties and responsibilities contained the clause, explained above, which carried with it discretionary assignment by the Attorney General and acceptance by the Special Prosecutor of certain matters which the Special Prosecutor determined to pursue. The Regulation, therefore, gave the public notice of the three general areas of investigation and prosecution lying specifically within the jurisdiction of the Special Prosecutor and the fourth area which would allow for certain transfers, for example, from the Criminal Division to the Special Prosecutor.[20] The Regulation creating the Special Prosecutor's office assured a great degree of independence in that office and reflected that no other *category* of exceptions to the Criminal Division's authority was being created. It made clear, however, that while the Criminal Division had no authority to overlap and assume control of any matters undertaken by the Special Prosecutor, there was created, in effect, a one-way valve whereby the Special Prosecutor could assume jurisdiction for *specific matters* which may otherwise have remained in the Criminal Division. This is not a case wherein regulations published by the Attorney General were violated by the agency issuing them. *See* Nader v. Bork, 366 F.Supp. 104, 108–109 (1973), and cases cited

16. 28 C.F.R. § 0.37 reads in part:
 "Except for the specific investigative and prosecutorial duties assigned to the Special Prosecutor, the Assistant Attorney General in charge of the Criminal Division will continue to exercise all of the duties currently assigned to him."
 *See also 1973 Hearings* at 77, 101, 153.

17. 5 U.S.C. § 552(a)(1)(A) (1970) provides that agencies shall publish descriptions of their central and field organizations, and in subsection (B) provides that agencies shall publish statements of the *general* course and methods by which agencies functions are channelled and determined.

18. 28 C.F.R. § 0.55 (1973). 28 C.F.R. § 0.-55(m)(1) places violations of 18 U.S.C. § 610 under the jurisdiction of the Assistant Attorney General in charge of the Criminal Division.

19. 28 C.F.R. § 0.37 (1973). *See also 1973 Hearings* at 200–201.

20. *See, e. g., 1973 Hearings* at 17, 77. Secretary Richardson testified that certain areas of investigation would involve communications between the Special Prosecutor and the Assistant Attorney General in charge of the Criminal Division of the Department of Justice. See note 13 supra. The instant

case, arising as it did out of investigation of matters within the categories set forth in § 0.37 and being of significance to "a situation in which confidence in the conduct of government and political processes has reached a crisis stage," *1973 Hearings* at 44, is one matter on the borderline between the jurisdictions of the Special Prosecutor and the Criminal Division.

The designation of which branch of the Department of Justice will assume the responsibility for the prosecution of a particular offense may be considered an internal matter of the Department. If a function of § 552 is to keep outside interests informed of the agencies' requirements as a guide to those interests' conduct in their daily affairs, *see, e. g.,* United States v. Hayes, 325 F.2d 307, 309 (4th Cir. 1963), then publication of which branch of the Department of Justice will prosecute each *individual* matter is superfluous. The actions of an individual in committing a crime are doubtless not governed by a consideration of who within the Department of Justice will be prosecuting the offense if the crime is discovered. *Cf.* T.S.C. Motor Freight Lines, Inc. v. United States, 186 F.Supp. 777, 786 (S.D.Tex. 1960), aff'd sub nom. Herrin Transportation Co. v. United States, 366 U.S. 419, 81 S.Ct. 1356, 6 L.Ed.2d 387 (1961).

therein. In this case the Regulation was implemented by the agency issuing the Regulation. Thus, the "and any other matter" clause of § 0.37 makes no further formal promulgation of regulation necessary in order for this particular matter to be assigned to and accepted by the Office of Watergate Special Prosecution Force.

It is therefore ordered:

That defendants' motion to dismiss the Information be denied.

It is further ordered:

That paragraphs 21, 23, 25, and 27 of defendants' motion for a bill of particulars be denied.