**UNITED STATES of America**

v.

**Thomas A. BROWN.**

**Crim. No. N–76–34.**

United States District Court,
D. Connecticut.

Jan. 20, 1977.

---

* This Order was reversed by the United States Court of Appeals for the Fourth Circuit. 563 F.2d 637 (4th Cir. 1977).

Peter C. Dorsey, U. S. Atty., Hugh W. Cuthbertson, Asst. U. S. Atty., New Haven, Conn., for plaintiff.

Andrew B. Bowman, Federal Public Defender, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

In this case, tried to the Court without a jury, the defendant is charged with wilfully possessing a silencer for a firearm in violation of the National Firearms Act, 26 U.S.C. §§ 5861(d) and 5871.

### I

The material facts are uncontroverted. On September 22, 1975, at approximately 12:15 P.M., Officer DiRenzo of the Connecticut State Police observed the defendant walking along Route 8 in Waterbury. As DiRenzo approached the defendant to question him concerning his presence on the highway, he noticed that the defendant possessed a pink mechanic's rag in his right hand. Investigation revealed that the cloth was wrapped around a .22 calibre revolver which had attached to it by screws a metallic device with a length of 3⁷⁄₁₆ inches and a diameter of 1³⁄₁₆ inches. The item had the general appearance of a device commonly known as a "silencer."

Upon being placed under arrest, the defendant was fully advised of his constitutional rights and transported to the state police barracks in Southbury. On the trip to the stationhouse, the defendant asked "for a break," explained that a man by the name of "Ray" fitted the gun with a "silencer," and that he, the defendant, was merely delivering the gun for a friend. At the barracks, the defendant was again advised of his rights and voluntarily executed a Waiver of Rights form. After expressly declining the services of an attorney, the defendant repeated substantially the same story concerning possession of the weapon to Sergeant Moore of the State Police.

Thereupon, state troopers fingerprinted, photographed and booked the defendant on a charge of carrying a dangerous weapon. At approximately 2:00 P.M., federal agents were notified and two hours later arrived at the barracks. The defendant was again advised of his rights, after which a statement was obtained. No federal arrest ensued at this time and the statement taken by the federal agents was not introduced at trial. In addition, the record does not disclose when the defendant was arraigned on the state charge.

At trial, Robert J. Scroggie, a firearms expert employed by the Bureau of Alcohol, Tobacco and Firearms, testified that on three occasions prior to trial he tested the item in question on three weapons. With respect to the gun on which the device was found, there was no reduction in the decibel level upon firing until Scroggie sealed the gap between the cylinder and the barrel of the gun with tape. He explained that in order to perform a valid test to determine

the sound-reducing qualities of a silencer on any revolver, the gap between the cylinder and breech must be sealed in order to force the escaping gas through the barrel of the gun into the silencer. With this modification, the device reduced the noise level of the gun by over four decibels.

In order to fit the device on a .22 calibre rifle, Scroggie had to remove the front sight of the rifle. The test on the rifle revealed a 19 decibel reduction in sound. The third pretrial test involved a .22 calibre automatic pistol. Although the device reduced the noise level by 14 decibels, it was disclosed that Scroggie had to attach the device to the pistol by the use of tape.

Thus, the testimony indicated that the device did reduce the noise level on three guns but only after some alterations were made on the weapons.

However, during the course of the trial, an in-court demonstration occurred by applying the device to a .22 calibre pistol obtained from a local manufacturer. No modification was necessary on either the weapon or the device. The test firing in the courtroom revealed that the device reduced the sound level of the gun by 13 decibels. Finally, Scroggie testified that in his expert opinion, the device was "a firearm silencer."   .

## II

The defendant first moves to suppress his statements to the law enforcement agents on two grounds: 1) that the defendant "was without counsel during the interrogation in the police car and at the barracks," and 2) that the state police improperly delayed his arraignment beyond six hours in order to permit federal agents to inspect the device and to interview the defendant.

██ These claims are without merit. The statements to the state police were voluntarily made shortly after arrest and only after full *Miranda* warnings were given and waived. See, e. g., 18 U.S.C. § 3501; cf. *United States v. Foye,* 448 F.2d 774 (2 Cir. 1971). Moreover, even assuming there was an unnecessary delay in arraigning the

defendant on state charges which may have tainted the admissions to the federal agents, cf. *United States v. Marrero,* 450 F.2d 373 (2 Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972), the government did not introduce the so-called "federal confession" and, therefore, the issue is academic.

## III

██ The defendant next contends that the government failed to prove that the device in question is in fact a "silencer" within the meaning of the National Firearms Act. He argues that, since the device failed to reduce the noise level of the weapon upon which it was attached at the time of arrest, the evidence that the device diminished the noise of other firearms, with or without modifications, is irrelevant to the issues in the case. The Court disagrees.

Section 5845(a)(7) of the Act includes within the definition of a firearm, "a muffler or a silencer for *any* firearm whether or not such firearm is included within this definition." (Emphasis supplied.) In addition, the regulations issued by the Secretary of the Treasury under the Act, 26 C.F.R. § 179.11, defines a silencer in relevant part as follows:

> Any device for silencing or diminishing the report of *any* portable weapon, such as a rifle, carbine, pistol, revolver. .   . (Emphasis added.)

The defendant cites no authority to support the proposition that a silencer must reduce the noise of the particular weapon to which it is attached. On the other hand, the Court of Appeals for the Ninth Circuit, in an unpublished opinion, expressly sustained the government's position that it is sufficient if the silencer in fact reduced the noise level of *any* firearm. *United States v. Disa,* No. 75–2423 (December 31, 1975). See also *United States v. Schrum,* 346 F.Supp. 537, 539–540 (E.D.Va.1972). This Court is in agreement with the Ninth Circuit, particularly in view of the demonstration during Scroggie's testimony that the device could

easily be removed from the weapon and was readily transferrable to another gun. Therefore, even assuming without deciding that the three pretrial tests performed by Scroggie must be disregarded, the in-court demonstration was sufficient to indicate that the device successfully diminished the noise of a weapon. Nothing more was necessary to sustain a conviction.

## IV

The remaining arguments of the defendant require little comment. It is settled law that the admission into evidence of a certification record from the Bureau of Alcohol, Tobacco and Firearms is proper to prove the essential element on non-registration under the Act. See, e. g., *United States v. Cruz,* 492 F.2d 217, 220 (2 Cir.), cert. denied, 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239 (1974); *United States v. Gardner,* 448 F.2d 617, 620–21 (7 Cir. 1971); *United States v. White,* 368 F.Supp. 470, 472 (N.D.Ind.1973), aff'd, 498 F.2d 1404 (7 Cir. 1974). Finally, the statute with respect to the definition of "silencer" is not unconstitutionally vague and uncertain. See *United States v. Disa,* supra; *United States v. Schrum,* supra at 540. As stated in *DiLeo v. Greenfield,* 541 F.2d 949, at 953 (2 Cir. 1976):

> The test of a statute's vagueness for due process purposes is to be made with respect to the actual conduct of the actor who attacks the statute and not with respect to hypothetical situations at the periphery of the statute's scope or with respect to the conduct of other parties who might not be forewarned by the broad language.

See also *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Chestnut,* 533 F.2d 40, at 50 (2 Cir. 1976).

## V

For the foregoing reasons, the Court finds the defendant guilty as charged; a judgment of guilty shall enter.