**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gregory Blaine ROSE,
Defendant-Appellant.**

**No. 81–1975.**

United States Court of Appeals,
Tenth Circuit.

Dec. 22, 1982.

J. Steven Schweiker, Overland Park, Kan., for defendant-appellant.

Vernon E. Lewis, Asst. U.S. Atty., Kansas City, Kan. (Jim J. Marquez, U.S. Atty., Kansas City, Kan., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Gregory Blaine Rose appeals his conviction after a jury trial on two counts of possession of unregistered semiautomatic weapons with barrels less than 16 inches long, in violation of 26 U.S.C. § 5861(d) and 26 U.S.C. § 5845(a)(3), (c), and two counts of "making" firearms with barrels less than 16 inches long without paying the tax required by 26 U.S.C. § 5821, in violation of 26 U.S.C. § 5861(f) and 26 U.S.C. § 5945(a)(3), (c).

The issues on appeal are: (1) whether the semiautomatic weapons, Uzis, are rifles as defined in the National Firearms Act; (2) whether the jury's verdict was supported by substantial competent evidence; (3) whether the court erred in denying the defendant's motion to view the National Firearms Registration and Transfer Record in Washington, D.C.; (4) whether the barrel ends of the Uzis were illegally seized and should have been suppressed; and (5) whether prosecution for these offenses infringed Rose's right to keep and bear arms as guaranteed by the Second Amendment to the Constitution.

The Uzi submachine gun, which has a collapsible stock, is a popular weapon in the Middle East and elsewhere. The American public has seen the Uzi often on television news programs. The Uzi's popularity has generated demands to permit its importation into the United States. Government regulations permit importation of a modified version of the Uzi. In this modified version, the mechanical parts of the weapon are altered so that it can be fired only in a semiautomatic mode, shooting one bullet for each squeeze of the trigger. Furthermore, the barrel is lengthened to 16.1 inches. The modified weapon also comes with a shorter, nonfunctional display barrel that simulates the barrel length of an unmodified Uzi. Rose admits that he purchased the two modified imported Uzis. He admitted at trial that he cut off one of the barrels (and that a friend cut off the other) so that the functional barrels were approximately the same length as the barrels of an unmodified Uzi submachine gun. At trial Rose claimed that he did not know it was against the law to saw off the barrels.

Rose's principal argument is that the semiautomatic Uzi with a collapsible stock is not a rifle as defined in the National Firearms Act, 26 U.S.C. § 5845(c). The Act defines "rifle" as follows:

"The term 'rifle' means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge."

Rose argues that to fall within the Act the weapon must have been designed or redesigned to be fired exclusively from the shoulder, and that the Uzi was designed to be fired primarily from the hip. The government responds that the modifications required for the legally imported version of the Uzi were intended to and in fact did classify the weapon as a carbine-type rifle. The imported version has a collapsible stock; it has a barrel 16.1 inches long; its firing mechanism is made semiautomatic. It fires a single projectile through its rifled bore for each pull of the trigger.

The case nearest in point on this issue is *Kanarr Corp. v. United States,* 413 F.2d 1143, 188 Ct.Cl. 1051 (1969), which held that a grenade launcher with a 14-inch barrel was a rifle within the meaning of the Act

even though the launcher was not fired from the shoulder for all desired ranges. That court emphasized that Congress' express policy was to include within the Act all weapons that could be used readily and efficiently by criminals as shoulder weapons. *See also Sipes v. United States,* 321 F.2d 174, 178 (8th Cir.), *cert. denied,* 375 U.S. 913, 84 S.Ct. 208, 11 L.Ed.2d 150 (1963) (that a weapon had no sights and "could be fired elsewhere than from the shoulder [made] it no less a rifle within the statutory definition").

■ We believe the Uzis at issue in this case were intended by Congress to be covered by the Act. Their collapsible stocks permitted them to be fired from the shoulder. Furthermore, the modifications in barrel length and firing mechanism required for importation closely track the language of the statute. Although the Uzi could be fired from several positions, testimony indicated that the Uzi is an effective shoulder weapon. We are cognizant of the rule that ambiguous criminal statutes must be construed in favor of lenity, *see United States v. Schwanke,* 598 F.2d 575, 579 (10th Cir. 1979); *but cf. United States v. Moore,* 613 F.2d 1029, 1044 (D.C.Cir.1979) (rule does not require "wooden" construction or construction in violation of common sense), *cert. denied,* 446 U.S. 954, 100 S.Ct. 2922, 64 L.Ed.2d 811 (1980); *United States v. Alvillar,* 575 F.2d 1316, 1320 (10th Cir.1978) (construction should give fair meaning in accordance with congressional intent). Nevertheless, we think these weapons as modified were redesigned or intended to be used as rifles within the meaning of the Act.

■ There is substantial evidence from which the jury could have found that Rose had sufficient notice of the criminality of his acts and exercised the requisite intent when he made the illegal modifications. The carton, the instructions, and the firearm itself contained warnings that modification of the firearm was unlawful. The evidence also revealed Rose to be a longtime gun collector, generally familiar with the registration law. The record provides sufficient support for the jury's verdict.

■ The trial court's refusal to grant the defendant's motion to visit the National Firearms Registration and Transfer Record room in Washington, D.C. was not an abuse of discretion under the circumstances of this case. The government produced evidence that a records search had been made and no weapons registration in the defendant's name had been found. Rose did not allege that he had in fact registered the weapons, even after his counsel was specifically questioned on this point by the trial judge at the hearing on the motion. He did not allege that the system had malfunctioned as to him. There may be circumstances in which one who wishes to impeach the quality of a recordkeeping system must be allowed to examine the system's operation. In this case, however, the defendant did not raise a sufficiently serious challenge to the firearms registration system; nor did he demonstrate why an inspection of the Washington, D.C. office was necessary. The trial court acted within its discretion in denying the motion.

■ The barrel ends recovered during the search were not the fruits of an illegal seizure. The trial court held that the barrel ends were lawfully discovered in plain view during the course of the execution of an admittedly valid search warrant. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971). No evidence in the record compels us to overturn that holding. The local police officer who first discovered the barrels was not sure what they were, but this does not invalidate the seizure. The officer was suspicious enough to immediately ask federal weapons experts accompanying the local officers to examine the barrel ends; these agents recognized the barrel ends to be potential evidence of a crime. The federal agents were properly on the scene to assist the local officers, *see United States v. Martin,* 600 F.2d 1175 (5th Cir.1979), and they were able to ascertain the incriminating nature of the barrel ends immediately. *Cf. United States v. Wright,* 641 F.2d 602, 606 (8th Cir.) (collective knowledge of officers

on the scene sufficient to satisfy plain view exception requirements), *cert. denied,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Roberts,* 619 F.2d 379, 381 (5th Cir.1980) (local policemen's decision to wait for FBI agents' arrival before seizing gambling evidence was permissible).

Rose's argument that the prosecution violated his Second Amendment right to bear arms was disposed of in this Court in *United States v. Oakes,* 564 F.2d 384, 387 (10th Cir.1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978).

AFFIRMED.