Gerald Michael TURNER, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. C–C–88–17–P, C–CR–87–64–01.

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 19, 1989.

George Laughrun, Charlotte, N.C., for petitioner.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court upon a Memorandum and Recommendation, filed December 28, 1988, by Magistrate Paul B. Taylor. Magistrate Taylor recommends that the Court deny Petitioner Turner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. sec. 2255 and grant the United States Attorney's Motion for Summary Judgment. Petitioner Turner moved the Court to vacate the sentence that he received following his guilty plea in C–CR–87–64.

In the Memorandum and Recommendation, Magistrate Taylor advised the parties that pursuant to 28 U.S.C. sec. 636(b)(1)(C), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in the Memorandum and Recommendation must be filed within ten (10) days after service of the Memorandum and Recommendation. The Magistrate also advised the parties that failure to file objections with the district court would preclude counsel from raising such objections on appeal. The Court has received no objections to the Memorandum and Recommendation.

The Court has reviewed the Memorandum and Recommendation and believes that it correctly states the law and the facts in the record. Pursuant to 28 U.S.C. sec. 636(b)(1)(C), the Court accepts and adopts the Magistrate's findings and recommendations.

IT IS ORDERED, THEREFORE, that:

1. Petitioner's Motion To Vacate Sentence be, and hereby is, DENIED; and

2. Respondent's Motion for Summary Judgment be, and hereby is, GRANTED.

The Clerk is directed to certify copies of this Order to Petitioner and the United States Attorney.

### MEMORANDUM AND RECOMMENDATION

PAUL B. TAYLOR, United States Magistrate.

THIS MATTER is before the undersigned Magistrate on recommendation from the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 in which he attacks the validity of his convictions in C–CR–87–64–01, specifically alleging:

1. That drilling a hole in an AKS–47 rifle does not constitute a violation of 26 U.S.C. § 5861(f);

2. That he was denied effective assistance of counsel because counsel failed to fully inform him of the applicable law governing the charges; and

3. That his plea was involuntarily obtained based on his ignorance and misconceptions of applicable law.

The United States Attorney, as Respondent, filed an Answer and Motion for Summary Judgment, along with a supporting affidavit of Paul H. Kaplan, the attorney who represented Petitioner from the arraignment through the plea and sentencing hearing.[1] Respondent also filed a transcript of Petitioner's plea and sentencing hearing. Petitioner, through counsel, responded to the Motion for Summary Judgment and requested an evidentiary hearing, alleging genuine issues of material fact. Upon review of the record and case file, the undersigned finds that an evidentiary hearing is unnecessary and herewith recommends that Petitioner's Motion to Vacate Sentence be denied.

### I. FACTUAL BACKGROUND

On July 8, 1987, a federal grand jury returned an indictment against Petitioner and two co-defendants wherein Petitioner was charged in Count One with making a firearm, a machine gun, without having complied with any of the requirements of 26 U.S.C. § 5822, in violation of 26 U.S.C. §§ 5861(f) and 5871; in Count Six with possessing a firearm, a machine gun, as defined in 26 U.S.C. § 5845(a), which had not been registered to him in the National Firearms Registration and Transfer Record maintained under 26 U.S.C. § 5841, in violation of 26 U.S.C. §§ 5861(d) and 5871; and in Count Seven, with possessing a firearm, a machine gun, which had been made in violation of Title 26 of the United States Code in that none of the requirements of 26 U.S.C. § 5822 regarding the making of such firearm had been complied with, in violation of 26 U.S.C. §§ 5861(c) and 5871.

Represented by retained counsel, Mr. Paul H. Kaplan, Petitioner entered a plea of not guilty to these charges at his arraignment on July 14, 1987. On September 18, 1987, the United States Attorney, Peti-

---

1. In this present action, Petitioner is represented by George Laughrun, II.

tioner and counsel executed a plea agreement in which Petitioner agreed to plead guilty to all charges against him. *See* Plea Agreement, Case File at Tab # 12. In exchange for Petitioner's pleas of guilty, the government agreed to recommend that all counts run concurrently with each other. *Id.*

On September 30, 1987, Petitioner appeared before the Honorable Robert D. Potter with his retained counsel and pleaded guilty pursuant to the terms of his agreement with the government. The record discloses that, at this hearing, the Court conducted the entire Rule 11 litany, which is designed to ensure that the defendant's guilty plea is knowingly, voluntarily and intelligently given. In the course of its colloquy with Petitioner, the Court read each of the charges against him, explained the essential elements the government would have to prove beyond a reasonable doubt should the matter be scheduled for trial, and advised him of the maximum penalties provided by law for the offenses to which he was pleading guilty. Transcript (hereinafter Tr.) at 4–9.

During the colloquy, Petitioner stated under oath that he understood the charges against him, the maximum penalties and the terms of the plea agreement; that he understood his rights; that he knew he was waiving his right to a jury trial by pleading guilty; that he had not been coerced or threatened into entering a guilty plea; and that his mind was clear and that he had heard and understood the proceedings. Petitioner also stated that he had had ample time to discuss with his attorney any possible defense he might have had to the charges and that he was entirely satisfied with the services of his attorney. Tr. at 9–16. Upon these assurances, the Court accepted Petitioner's guilty pleas, finding that his pleas were made freely, voluntarily and with an understanding of the nature of the charges and consequences of the pleas. Tr. at 17. After the government's presentation of the evidence, the Court found a factual basis for Petitioner's pleas of guilty, affirmed the acceptance of the pleas, and entered a verdict of guilty. Tr. at 31. The sentencing proceeding was then recessed because witnesses offered by the defendants were unable to testify until a later date.

At the beginning of the second hearing, Judge Potter ascertained that counsel and Petitioner had read the presentence report. Tr. at 33. After soliciting corrections to the report, the Court allowed counsel and Petitioner to offer evidence and make statements regarding sentencing. When asked if he had anything to say, Petitioner made statements only about his knowledge of the whereabouts of his firearm on the day in question. Tr. at 41. He did not dispute any of the evidence presented or make any comments about the representation of his attorney, nor did he question the applicable law. At the conclusion of the evidence presented by codefendants, Judge Potter sentenced Petitioner to a term of imprisonment for five years, plus an assessment of $150.00. Tr. at 125.

## II. DISCUSSION

### A.

■ Petitioner's first allegation is that, as he interprets the applicable statutes, he cannot be guilty of violating 26 U.S.C. § 5861(f). In support of this claim, Petitioner states that he merely drilled a hole through his firearm and that this drilling of a hole does not meet the definition of the statutory term "make" as defined as 26 U.S.C. § 5845(i). Petitioner asserts that the drilled hole affected neither the firing capabilities of the firearm nor the firearm itself, other than leaving a hole in it. *See* Motion to Vacate Sentence, Attachment at 4, Case File at Tab # 21.

Willie F. Blocker, a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, testified at the first sentencing hearing about the automatic nature of Petitioner's and Co-defendant Bogatay's firearms. *See* Tr. at 17–29. Both firearms were originally AKS–47 semi-automatic rifles, which had been shipped to Petitioner, a federally licensed firearms dealer in Charlotte, doing business as Advanced Weapons Systems. One of the rifles was sold to Bogatay and the other was logged out from the business

to Petitioner. Agent Blocker's testimony showed that Bogatay admitted that "he purchased an AK–47 conversion kit at Metrolina Fairgrounds Gun Show for $89.00 [and that] [s]hortly thereafter, he began manufacturing a fully automatic machine gun from his firearm by altering it to accommodate the conversion kit." Tr. at 18–19. Agent Blocker explained in detail how Bogatay had converted his rifle to be fully automatic:

> The conversion kit he had purchased by his own statement from the Metrolina Flea Market was one of the internal parts of the AKS–47. The original parts were removed and this conversion kit, which converts the firearm to fully automatic, along with some removal of parts of the internal metal to make the conversion kit fit and drilling of a hole to accommodate parts of the conversion kit to allow this rifle to fire fully automatic. Tr. at 21.

Agent Blocker then testified that Bogatay, hearing about the shooting at Carowinds, released his rifle to the police. Before he turned over the rifle to the police, he had removed the conversion kit so that it was no longer fully automatic. Tr. at 20–22. A firearms specialist inspected the rifle and the conversion kit which authorities had found hidden at Bogatay's house and determined that Bogatay's "firearm had been converted to fully automatic, along with the conversion kit being the parts necessary to convert this AKS–47 that belonged to Bogatay." Tr. at 22.

Agent Blocker testified that Petitioner also released an AKS–47 to the police. The firearms specialist determined that this firearm had not been converted to fully automatic because it was still in its original semi-automatic state as shipped from the importer. Tr. at 23–4. However, a check of the Turners' business records revealed that this gun actually belonged to Petitioner's brother and that there was another AKS–47 which had been logged out to Petitioner from his gun dealership. Tr. at 24. Thereafter, Petitioner turned over the other AKS–47, stating that it belonged to his brother. *Id.* Agent Blocker testified that this firearm, Serial number 85F7620530 (at times referred to as "530" or "number 530" by the district court and others during the hearing), which Petitioner's business records showed had been logged out to Petitioner, had "been converted to fully automatic." Tr. at 24. Petitioner's attorney did not cross-examine Agent Blocker. *See* Tr. at 29. Consequently, Agent Blocker's testimony that gun "530" had "been converted to fully automatic" stands unrefuted in the record.

The testimony of Agent Blocker regarding the automatic nature of Petitioner's firearm clearly supports the conviction under 26 U.S.C. § 5861(f). § 5861(f) provides that it is unlawful to make a firearm in violation of the provisions of Chapter 53 of Title 26. 26 U.S.C. § 5822 provides that no person shall make a firearm unless he has formally applied to and obtained approval from the Secretary.

There is no dispute that Petitioner's rifle was a firearm as defined under this title. There is also no dispute that Petitioner failed to formally apply to the Secretary for approval to "make" his firearm. The only dispute in the instant case is whether drilling a hole in a firearm constitutes "making" a firearm under Title 26. 26 U.S.C. § 5845(i) defines "make" to

> include [the] manufacturing (other than by one qualified to engage in such business under this chapter), putting together, *altering*, any combination of these, or otherwise producing a firearm. (emphasis added)

"Altering" is not defined in the firearms chapter of Title 26. In the absence of express definition, words in a statute are to be given their commonly accepted meaning. *United States v. Schrum*, 346 F.Supp. 537, 539 (E.D.Va.1972). The Random House College Dictionary, 1975, defines "alter" as: "to make different in some particular, as size, style, course, or the like; [to] modify...."

Petitioner clearly altered his firearm by drilling a hole in it. Although he stated after the fact in a post-sentence motion that he drilled the hole for "collector's intent only," *See* Letter, Case File at Tab

# 34, and although the hole alone does not affect the firing capabilities of the firearm, the drilling of the hole is clearly an "altering" of the firearm per the commonly accepted meaning of "alter". It made that part of the rifle different by placing a hole in it. This "altering" is clearly within the meaning of the term "make" as defined in 5845(i). *See, e.g., United States v. Rose,* 695 F.2d 1356 (10th Cir.1982) (where defendant's conviction under 26 U.S.C. § 5861(f) was affirmed when defendant altered a firearm by cutting off the barrel), *cert. denied,* 464 U.S. 836, 104 S.Ct. 123, 78 L.Ed.2d 121 (1983). Because Petitioner so altered his firearm without prior approval from the Secretary, his action is in violation of § 5861(f). The violation of § 5861(c), possessing a firearm made in violation of Title 26, naturally follows the violation of 5861(f) because the firearm in question was undisputedly in Petitioner's possession after it had been made. Further, although the statute does not require the government to prove a defendant's motive for altering or making a gun, as shown by Agent Blocker's testimony with regard to Co-defendant Bogatay's gun, the purpose of drilling such a hole is to add a conversion kit to complete the making of a machine gun from the semi-automatic AKS–47. Accordingly, Petitioner's claim that his drilling a hole in his semiautomatic rifle does not constitute a federal violation is without merit and should be dismissed.

### B.

■ Petitioner's second allegation is that he was denied effective assistance of counsel because his attorney failed to fully inform him of the applicable law governing the charges. In support of this claim, Petitioner states that counsel did not fully explain various statutes under Title 26; that counsel did not apply these statutes to the facts at the time of his sentence; and that the facts as he understands them do not constitute a federal violation. *See* Motion to Vacate Sentence, Attachment at 2, Case File at Tab # 21. Petitioner further states that "within the facts of this case, the firearm in question ... had not been 'made'." *Id.* at 3.

As noted in the discussion under Section A, *supra,* under the facts of this case, Petitioner's firearm had indeed been "made", within the meaning of 26 U.S.C. § 5845(i) and Petitioner's present belief of the proper interpretation of that statute is incorrect. Counsel, therefore, was not ineffective in applying the provisions of Title 26 to the facts of this case and concluding that Petitioner had violated the law by altering his firearm. Accordingly, the undersigned finds that Petitioner's second claim, that counsel provided ineffective assistance in counseling him to plead guilty, is without merit and should be dismissed.

### C.

■ Petitioner's final claim is that his plea was involuntarily based on his ignorance and misconceptions of applicable law. In support of this claim, he states that he was misinformed about the interpretations of the various violations of Title 26 and, relying on the erroneous advice of counsel, thus, he pleaded guilty. *See* Motion to Vacate Sentence at 5, Case File at Tab # 21.

This claim, like the second one, depends on whether Petitioner's action of drilling a hole in his firearm constitutes a violation of federal law. As already discussed in Section A, *supra,* this activity does fall within the definition of "make" as provided in § 5845(i) and, therefore, constitutes violations of §§ 5861(f), 5861(c), and 5822. As already discussed in Section B, *supra,* Petitioner was correctly informed by counsel that this activity violated these statutes. Consequently, his plea was not based on any ignorance or misconception of applicable law; rather, it was based on a proper interpretation of the applicable law. His plea, therefore, was not involuntary, but was knowingly and voluntarily entered into, as he assured Judge Potter under oath during his plea and sentencing hearing. Accordingly, the undersigned finds that Petitioner's final claim is without merit and should be denied.

### III. RECOMMENDATION

Based upon the foregoing findings of fact and conclusions of law, the undersigned respectfully recommends:

1. That Petitioner's Motion to Vacate Sentence be DENIED; and

2. That Respondent's Motion for Summary Judgment be ALLOWED.

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Failure to file objections to this Memorandum with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

The Clerk is directed to certify copies of this Memorandum and Recommendation to counsel for Petitioner and the United States Attorney.

Respectfully submitted, this 28th day of December, 1988.