**UNITED STATES of America,**
**Plaintiff,**

v.

**M–K SPECIALTIES MODEL M–14 MACHINEGUN SERIAL NUMBER 1447797, et al., Defendants.**

No. 1:04–CV–41.

United States District Court,
N.D. West Virginia.

March 22, 2006.

Betsy Steinfeld Jividen, Michael D. Stein, U.S. Attorney's Office, Wheeling, WV, for Plaintiff.

James B. Zimarowski, Morgantown, WV, Richard E. Gardiner, Fairfax, VA, for Defendants.

## *ORDER GRANTING THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND FORFEITING THE DEFENDANT PROPERTY TO THE GOVERNMENT*

KEELEY, District Judge.

This forfeiture action is pending on competing motions for summary judgment filed by the Government and the claimants. For the following reasons, the Court **GRANTS** the Government's motion for summary judgment and **FORFEITS** the defendant property to the Government.

## I. BACKGROUND

### A. Brief Statutory Primer

The National Firearms Act ("NFA"), 26 U.S.C. § 5801 *et seq.*, provides for the federal taxation of certain classes of firearms, including, but not limited to, "machineguns," and further provides for a central registry of all such firearms that are not under the control of the Government. This central registry is called the National Firearms Registration and Transfer Record ("NFRTR"). The information in the NFRTR includes identification of each firearm (by serial number), the date of the firearm's registration, and the name and the address of the person who is entitled to possess the firearm. 26 U.S.C. § 5841(a).

Each manufacturer, importer and maker must register in the NFRTR each firearm that it produces if the firearm falls within the specific statutory class of firearms. 26 U.S.C. § 5841(b). The NFA also requires each manufacturer, importer and dealer of firearms as defined by the Act to register with the Secretary of Treasury in each internal revenue district in which it intends to conduct business and pay a special (occupational) tax for each place of business. 26 U.S.C. §§ 5801, 5802.

Furthermore, any person who transfers a firearm subject to the Act must register the firearm to the person to whom it is being transferred and pay a transfer tax. 26 U.S.C. §§ 5811, 5812, 5841. In order to register a firearm, the person selling the firearm must file with the Bureau of Alcohol, Tobacco, and Firearms of the Department of Treasury ("ATF") an application for the transfer and registration of the firearm to the person purchasing the firearm. 26 U.S.C. § 5812(a). The application requires payment of the transfer tax, which is assessed by the NFA upon each transfer of the firearm. 26 U.S.C. § 5811. The transferee may only take possession of the firearm after the Secretary of Treasury has approved the transfer and registration of the firearm. 26 U.S.C. § 5812(b).

Based on the preceding statutory provisions, 26 U.S.C. § 5861 states:

It shall be unlawful for any person—

(a) to engage in business as a manufacturer or importer of, or dealer in, firearms without having paid the special (occupational) tax required by section 5801 for his business or having registered as required by section 5802; or

(b) to receive or possess a firearm transferred to him in violation of the provisions of this chapter; or

(c) to receive or possess a firearm made in violation of the provisions of this chapter; or

(d) to receiver or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter. . . .

Moreover, any firearm involved in a violation of the NFA is subject to seizure and forfeiture. 26 U.S.C. § 5872(a).

The NFA's definition of a firearm includes, but is not limited to, a "machinegun." 26 U.S.C. § 5845(a)(6). The NFA defines "machinegun" as follows:

> Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, or by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b). The definition of "machinegun" underlies the dispute in this matter.

## B. Brief Summary of Facts

The defendants are MK Specialities model M–14, 7.62 caliber machineguns that are identified by individual serial numbers. MK Specialities, Inc. ("MK Specialities") is the company through which Michael Kelly, Sr. ("Kelly") distributed these firearms. Kelly held a Federal Firearms License as a manufacturer and dealer of firearms and, therefore, was licensed to distribute firearms out of his residence in Grafton, West Virginia.

As a manufacturer and dealer of firearms, Kelly, doing business as MK Specialities, neither paid the special (occupational) tax required by 26 U.S.C. § 5801 nor registered with the Secretary of Treasury as required by 26 U.S.C. § 5802. Furthermore, he possessed the defendant receivers without registering the firearms in the NFRTR as required by 26 U.S.C. § 5841. Similarly, neither Kelly nor any claimant, as required by 26 U.S.C. §§ 5812(a), 5841(b), registered any of the defendant receivers in the NFRTR when they were transferred.

On March 10, 2004, the Government filed its complaint for forfeiture in rem, claiming that the defendant receivers are "machineguns" as defined by the NFA and requesting that they be forfeited to the Government pursuant to 26 U.S.C. § 5872(a). In response, several claimants filed verified claims of interest or right in the defendant receivers.

On May 18, 2005, the Government filed a motion for summary judgment, and, on June 8, 2005, claimants, Michael J. Kelly, Sr., William Thomas, and Gary Beach, filed a cross motion for summary judgment. Moreover, additional claimants filed responses to the Government's motion for summary judgment, incorporating by reference all arguments introduced by the other co-claimants and their counsel. These motions are now ripe for review.

## II. STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, when applying the standard for summary judgment, a court must review the evidence "in the light most favorable to the nonmoving party." *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To withstand such a motion, the nonmoving party must present evidence from which "a fair-minded jury" could return a favorable verdict. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient..." *Id.*

Under 26 U.S.C. § 5872(a), property involved in a violation of the NFA is subject to seizure and forfeiture to the United States. However, a person may file a claim of ownership of the property seized by the Government for forfeiture. 19 U.S.C. § 1608; *U.S. v. Fifteen Thousand Five Hundred Dollars ($15,500.00) U.S. Currency,* 558 F.2d 1359 (1977). Once a claim of ownership is filed, the Government must satisfy its initial burden by demonstrating that it had probable cause to believe that the property was involved in a violation of law. 19 U.S.C. § 1615. Once the government establishes probable cause, the burden shifts to the claimant to establish by a preponderance of the evidence that the property was not related to a violation of law. *Id.* Thus, summary judgment ordering forfeiture is appropriate when the Government establishes probable cause, and the claimant fails to show that the facts constituting probable cause did not exist. *United States v. Premises Known as 3639–2nd St., N.E.,* 869 F.2d 1093 (8th Cir.1989).

Here, the Government must show that it had probable cause to believe that the defendant property was possessed or transferred in violation of the NFA. The undisputed facts demonstrate that neither Kelly nor any other claimant ever registered the defendant receivers with the NFRTR. As stated above, a person violates the NFA if he possesses or transfers a "machinegun" that is not registered in the NFRTR. 26 U.S.C. § 5841. Therefore, if MK Specialities' M–14 receivers are in fact firearms as defined by the NFA, they are subject to forfeiture because they were involved in violations of the NFA. 26 U.S.C. § 5872(a). Accordingly, the dispositive issue in this matter is whether the defendant receivers are "machineguns" as defined by the NFA.

### III.  ANALYSIS

### A.  Statute at Issue

Under 26 U.S.C. § 5845(b), a "machinegun" includes any weapon that: 1) shoots automatically; 2) is "designed to shoot" automatically; or 3) can be "readily restored" to shoot automatically. It is not necessary for a firearm to meet all three of these definitions to be deemed a "machinegun." *U.S. v. Aguilar–Espinosa,* 57 F.Supp.2d 1359, 1362 (M.D.Fla.1999). Rather, if a firearm meets any one of these concepts, the firearm is a "machinegun" as defined by the NFA. *Id.* The Government does not contend that the defendant receivers shoot automatically in their current condition. Thus, the Court must focus on the latter two concepts in determining whether the defendant receivers are "machineguns" as defined by the NFA.

### 1.  Designed To Shoot

The Government asserts the "designed to shoot" concept as an independent basis for summary judgment in this matter. As the basis for this claim, it states that other courts have previously held that M–K Specialties' M–14 receivers are "machineguns" within the definition of the NFA because they are "designed to shoot" automatically. The claimants, however, assert that, unlike the cases relied on by the Government, the present record lacks any report prepared by the Firearms Technical Branch ("FTB Report") describing the specific design features of the M–14 ma-

chinegun retained by the MK Specialities' M–14 receivers.

The NFA does not define the term "designed to shoot." The Bureau of Alcohol, Tobacco, and Firearms's ("ATF") ruling, however, states that "designed to shoot" includes weapons that "possess specific machine gun design features which facilitate automatic fire by simple modification or elimination of existing component parts." ATF Rule 83–5. Recently, four district courts have held that M–K Specialities' M–14 receivers are "machineguns" within the definition of the NFA because they are "designed to shoot" automatically. *U.S. v. One TRW, Model M14, 7.62 Caliber Rifle*, 294 F.Supp.2d 896, 901–902 (E.D.Ky. 2003); *U.S. v. One Harrington and Richardson Rifle, Model M–14, 7.62 Caliber, Serial Number 85279*, 278 F.Supp.2d 888, 891–92 (W.D.Mich.2003), *aff'd*, 378 F.3d 533 (6th Cir.2004); *U.S. One (1) MKS/ TRW Model M14 Machinegun Receiver, Serial No. 593006*, CV 02–264–TUC–RCC (D.Az.2004) (unpublished); and *U.S. v. One (1) MKS/TRW U.S. Rifle Model 14 7.62x51 mm caliber, Serial No. 1393707*, 02–CV–3281 (C.D.Ill.2003)(unpublished). In these four cases, the courts relied on the FTB Report prepared by Officer Richard Vasquez as the basis for their holding that MK Specialities' M–14 receivers were "designed to shoot" automatically.

In *U.S. v. One TRW, Model M14*, 294 F.Supp.2d at 897, the United States District Court for the Eastern District of Kentucky granted summary judgment in favor of the Government in a forfeiture action involving a MK Specialities' M–14 receiver. In that case, ATF special agents seized the receiver from a claimant at their Lexington Field Office on January 11, 2002.[1] *Id.* As the defendant receivers in this matter, the M–14 receiver at issue in

*U.S. v. One TRW, Model M14* had been manufactured by MK Specialities from M–14 machinegun receivers that had been cut in half. *Id.* Although he did not actually restore the receiver to automatic condition, Officer Vasquez examined the receiver and issued a report stating that the receiver had the features necessary to facilitate automatic fire by simple modification, and, therefore, was "designed to shoot" automatically. *Id.* at 901.

Here, the Government also relies on the testimony of Officer Vasquez to support its claim that the defendant receivers are "machineguns" as defined by the NFA. In the present matter, however, Officer Vasquez actually restored a MK Specialities' M–14 receiver to shoot automatically instead of merely issuing a report containing his opinions that it is designed and could be restored to shoot automatically.

Prior to the start of Vasquez's deposition in which he restored the defendant receiver, the parties agreed to and placed a stipulation on the record. They stipulated that the MK Specialities Model M–14A Serial Number 1392697, a defendant receiver in this case, was in a condition that was representative of the condition of all MK Specialities' M–14 receivers when they are completed at the factory. The Government, therefore, asserts that the four cases on which it relies are not distinguishable based on the lack of a report in this case. Rather, it contends that Kelly has admitted that the receiver restored during Vasquez's deposition represented the condition of all MK Specialities' M–14 receivers when they left the factory. Accordingly, the Government claims that Kelly conceded that all of the MK Specialities' receivers have the same design, and, therefore, no dispute exists that the design

1. As part of that same investigation, on December 19, 2001, ATF Special Agents seized

the defendant receiver that Officer Vasquez restored to shoot automatically in this case.

features of the defendant receivers are identical to those of the defendant receivers in the earlier cases.

The claimants contend, however, that the record establishes that all MK Specialties' receivers do not possess the same design features because the Government conceded that there was no functional selector stud on the receiver that Officer Vasquez restored to shoot automatically during his deposition. They state that the FTB report produced by Vasquez in *U.S. v. One TRW, Model M14* indicated that the M-14 receiver retained the selector stud, a design feature specific to an M-14 machinegun receiver. They further state that the FTB report explained that the selector stud allowed the sear release, the selector, the selector shaft, a spring pin, and a selector spring to be attached to the receiver, therefore allowing it to shoot automatically. Accordingly, the claimants assert that there is nothing in the record to support the contention that, in the absence of a functional selector stud, the MK Specialities' receivers were nonetheless "designed to shoot" automatically.

In the present matter, the Government does not rely on a report issued by Officer Vasquez concerning the design features specific to the M-14 machinegun that were maintained by the MK Specialities' M-14 receivers. Rather, the Government relies on the deposition of Officer Vasquez in which he restored a defendant receiver to fire automatically. Vasquez's deposition establishes that the defendant receivers are "designed to shoot" automatically because Vasquez performed a simple modification on specific machine gun design features maintained by the defendant receiver which facilitated automatic fire. Accordingly, the claimants' argument based on a lack of a report in this matter is unpersuasive.

The claimants place great emphasis on the fact that a receiver must have a design feature that allows the assembly of the sear release, the selector, the selector shaft, a spring pin, and a selector spring to be "designed to shoot" automatically because those specific parts allow the receiver to fire automatically. Officer Vasquez's deposition demonstrates that the defendant receivers have the design feature which would allow the sear release, the selector, and the selector shaft to be attached to the receiver because he attached these parts to a defendant MK Specialties' M-14 receiver by drilling out and grinding down the welding that had been placed on the defendant receiver by MK Specialties and utilizing the existing design features of the receiver. Therefore, the record demonstrates that the defendant receivers in this case, like the MK Specialities' M-14 receivers in the four prior district court cases, possess design features necessary to facilitate automatic fire by simple modification. Accordingly, the Court concludes that the defendant receivers are "designed to shoot" automatically.

### 2. Readily Restored

Even if the defendant receivers are not "designed to shoot" automatically, Officer Vasquez restored a MK Specialities' M-14 receiver to shoot automatically in less than 50 minutes. Relying on Officer Vasquez's deposition, the Government asserts that the defendant receivers are "readily restorable" to shoot automatically, and, therefore, qualify as "machineguns" under the NFA. The claimants, however, assert that Officer Vasquez's qualifications permitted him to restore the defendant receiver in 50 minutes and that the restoration process may be extremely difficult, if not impossible, for a person without such specialized knowledge and skills. They also state that the defendant receivers were

converted and not restored to fire automatically.

The NFA does not define "readily restored," but ATF Ruling 83–5 provides that a firearm can be "readily restored" to shoot automatically if the firearm previously could shoot automatically, but cannot shoot automatically in its present condition. "The intent of the 'ready restoration' clause is, at least, to statutorily include a weapon that is inoperable as a fully automatic weapon on the occasion of the alleged unlawful possession but is capable of renewed automatic operation by the purposeful deployment of a practicable effort." *U.S. v. Aguilar–Espinosa*, 57 F.Supp.2d at 1362–63. The restoration process may require:

> (1) the ability of a reasonably skilled and knowledgeable individual, but not necessarily an expert or artistic worker; and
>
> (2) tools that are readily available to, and commonly understood by, such individuals.

*Id.* In *Aguilar–Espinosa*, the court noted that readily available tools included Allen wrenches, files, jeweler's screw drivers, but excluded the resources available to a master machinist with a modern well-equipped lathe. *Id.*

It further stated that "[t]he applicable test is the 'readiness' of the restoration rather than its ultimate feasibility." *Id.* With respect to "readiness" of restoration, the Eighth Circuit has held that a firearm was "readily restorable" even though the process of restoration would require an eight-hour working day in a properly equipped machine shop. *U.S. v. Smith*, 477 F.2d 399, 400 (8th Cir.1973).

In *U.S. v. One Harrington and Richardson*, 378 F.3d, 533, 534 (6th Cir.2004), the Sixth Circuit affirmed a district court's holding that a Harrington and Richardson M–14 rifle had features necessary to facilitate automatic fire by simple modification, and therefore, it satisfied both the "designed to shoot" and the "readily restorable" criteria necessary to classify it as a machine gun under the NFA. Based on an examination of the receiver, Officer Vasquez opined in *U.S. v. One Harrington* that the M–14 rifle had the features necessary to facilitate automatic fire, and, therefore, was "readily restorable" to shoot automatically. *U.S. v. One Harrington*, 278 F.Supp.2d at 891–92. The district court found this determination was made after a reasonable analysis of the receiver and that Officer Vasquez was a qualified expert. *Id.*

Likewise, in *U.S. v. One TRW, Model M14,7.62 Caliber Rifle*, based on opinions of Officer Vasquez, the district court held that a MK Specialities' M–14 receiver, the same receiver at issue in this matter, was "readily restorable" to shoot automatically. Similarly, in *U.S. One (1) MKS/TRW Model M14 Machinegun Receiver, Serial No. 593006*, CV 02–264–TUC–RCC (D.Az.2004) (unpublished), based on the opinions of Officer Vasquez that modifications could be made to the receiver in 45 minutes using commonly available hand tools to restore it to automatic condition, a district court held that a MK Specialities' M–14 receiver was "readily restorable" to shoot automatically.

Because the unambiguous terms are not defined by the statute, the parties agree that "readily" and "restorable" should be given their ordinary meanings. The parties, however, disagree as to the proper results from the application of the present facts to the ordinary meanings of those terms.

### a. Readily

"Readily" commonly means: "without hesitation;" "without delay;" "quickly;" and

"without difficulty." *U.S. v. Seven Miscellaneous Firearms,* 503 F.Supp. 565, 573(D.D.C.1980). The claimants contend that the process utilized by Officer Vasquez, involving approximately 50 minutes of labor by a highly trained and experienced gunsmith, is not "readily" performed. They assert that the statute must be applied not based upon the knowledge and skills of an expert, but upon the knowledge and skills of an ordinary person. The Government contends that the purpose of the NFA is to keep automatic weapons off the streets and makes no distinction as to the expertise of the person restoring the weapons to place them there.

In *U.S. v. Aguilar–Espinosa,* 57 F.Supp.2d at 1362, the district court stated that the term "readily restorable" included a less than arduous assembly of manageable and available parts. During his deposition, Officer Vasquez primarily used a Dremmel drill, carbide burr, and Tig welder to restore the defendant receiver to shoot automatically. He used the Dremmell drill and carbide burr to drill out the nonfunctional selector shaft, cut the sear release, and grind down a new selector stud. Vasquez used a Tig welder to perform the minimal welding on the receiver, but indicated that a welding machine that is commonly available to a typical hobbyist could be used for the same purpose.

■ Common sense suggests that these tools do not require specialized training. Individuals with ordinary skill can easily purchase these tools from their local hardware store and learn how to operate them from the directions which accompany the tools or through their actual use of the tool. Furthermore, in today's society, the internet provides an abundance of information and could provide a person with average mechanical abilities with sufficient guidance to restore a receiver to shoot automatically. Interestingly, during his deposition, Officer Vasquez indicated that he obtained the additional gun parts required to complete the restoration through an internet website. With his specialized training involving firearms, Officer Vasquez completed the restoration process in approximately 50 minutes. Clearly, a person with ordinary skill researching automatic weapons and using common tools could replicate the restoration, albeit with some additional time and effort. The court, therefore, concludes that the restoration on the defendant receivers can be "readily" performed by either an expert or an individual with ordinary skill.

**b. Restorable**

"Restored" commonly means: "to bring back to a former or normal condition." *U.S. v. Seven Miscellaneous Firearms,* 503 F.Supp. at 574. The claimants assert that the defendant receivers were not returned to a previous condition as they were not M–14 receivers which had been modified; rather, they were new creations that had been manufactured from pieces of two different receivers. The Government, however, asserts that the undisputed facts demonstrate that the defendant receivers were manufactured from military M–14 receivers that previously had fired automatically and were returned to that previous condition during Vasquez's deposition.

26 U.S.C. 5845(b)does not focus on the physical condition of the weapon, but rather on the condition of being able to fire automatically. Section 5845 does not require that the weapon be restored to its original physical condition, but rather that the weapon be restored to its original automatic firing condition. Here, it is undisputed that the MK Specialities' M–14 receivers were manufactured from military M–14 machinegun receivers that originally had the capability of firing automatically. Despite the fact that MK Specialities per-

formed modifications on the machinegun receivers during the manufacturing process, the defendant receivers maintained design features of the M–14 machine gun. The statutory language makes clear that the restoration process does not have to return the defendant receivers to their physical condition, but instead has to restore their capability to fire automatically. Officer's Vasquez's deposition establishes that the MK Specialities' M–14 receivers may be restored to automatic firing condition because he was able to perform simple modification which permitted a defendant receiver to fire five rounds automatically. Accordingly, the defendant receivers are "readily restorable" to shoot automatically as required by 26 U.S.C. 5845(b) to be deemed a "machinegun" under the NFA.

## B. ATF's Classification

In this case, the Government did not merely rely on the ATF's classification of the defendant receivers as a "machinegun," but instead had Officer Vasquez demonstrate why the ATF classifies such receivers as "machineguns." The Government, however, asserts that the Court must defer to the ATF's expertise with respect to the classification of firearms under 26 U.S.C. § 5845. The claimants contend that the court may not defer to the agency's interpretation of 5845(b). Rather, it states that the Court must apply the ordinary rules of statutory construction and interpret and apply the law itself.

■ Congress has delegated the administration of the NFA to the Department of Treasury, which acts through the ATF. *York v. Secretary of Treasury,* 774 F.2d 417 (10th Cir.1985). Considerable weight should be given to an executive department's construction of a statutory scheme it is entrusted to administer. *U.S. v. Mead Corporation,* 533 U.S. 218, 226–227, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001).

The interpretations or classifications by the agencies administering a statute "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertise, and to the persuasiveness of the agency's position. *Id.* at 228, 121 S.Ct. 2164. Thus, the weight accorded to the ATF's classification "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* However, a reviewing court shall set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.*

In *U.S. v. One Harrington,* 378 F.3d at 534, the Sixth Circuit found that the ATF's analysis was thorough, its reasoning valid, and its decision consistent with earlier pronouncements; therefore, it found that the classification of the receiver was not arbitrary, capricious or an abuse of discretion. Similarly, in *U.S. v. One TRW Model M14,* 294 F.Supp.2d at 901–902, the district court concluded that the ATF's classifications were to be reviewed under an arbitrary and capricious or abuse of discretion standard, and that the ATF's classification of the M–14 as a "machinegun" had not been shown to be arbitrary. Likewise, in *U.S. v. One TRW U.S. Rife Model 14,* no. CV–02–264–TUC–RCC, (D.Az.2004) (unpublished), the district court applied the arbitrary and capricious standard to the ATF's classification of the M–14 receiver as a "machinegun" and concluded that it did not abuse its discretion in making that determination.

Although the parties' interpretations of the statute may differ, the Court finds that Congress has expressly spoken on this issue within the plain and unambiguous terms of the statute. When the term "readily restorable" is given its common ordinary meaning, there is simply no way to read the limitations in the statute that the claimants are advocating. Therefore, the Court holds that the plain and unambiguous language of section 5845(b) classifies MK Specialities' M–14 receivers as "machineguns." Furthermore, as demonstrated by the cases discussed, the ATF did not abuse its discretion in classifying MK Specialities' M–14 receivers as "machineguns."

## C. Constitutionality

The claimants have asserted that 26 U.S.C. 5845(b) does not specify by whom the weapon must be restored and only states that a weapon may be a machinegun if it "can be" readily restored. Relying on *Peoples Rights Organization, Inc. v. City of Columbus*, 152 F.3d 522 (6th Cir.1998), they contend that the phrase "can be" readily restored is "unconstitutionally vague inasmuch as the phrase fails to provide sufficient guidance to a person of average intelligence as to what is prohibited."

■ The test to be applied is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *U.S. v. Petrillo*, 332 U.S. 1, 8, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). If a statute is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, then it violates due process. *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

Upholding the "can be readily restored" language from § 5845(b) is consistent with the body of precedent interpreting the National Firearms Act. *U.S. v. Whalen*, 337 F.Supp. 1012 (D.C.N.Y.1972)(holding that the National Firearms Act is not unconstitutionally vague). Although the "machinegun" provision at issue here has apparently not been challenged, courts have upheld virtually identical language in other provisions of § 5845. *See e.g. U.S. v. Drasen*, 845 F.2d 731, 737–38 (7th Cir.1988) (rejecting a vagueness challenge to the phrase "readily restored" in § 5845(c) defining "rifle"); *United States v. Catanzaro*, 368 F.Supp. 450, 452–54 (D.Conn.1973) (rejecting a vagueness challenge to the phrase "may be readily restored to fire" in § 5845(d), defining "shotgun," and § 5845(e), defining "any other weapon"). The claimants, however, have cited no case that strikes down any such provision in § 5845 as unconstitutionally vague.

■ The parties agree that the statutory language of section 5845(b) is unambiguous, and, therefore, the ordinary meaning of the term "readily restored" should be used when applying section 5845(b) to the present matter. Therefore, the statute's terms should be easily understood by a person of ordinary intelligence. Furthermore, as noted, a layperson may obtain the tools from their local hardware stores and the additional gun parts via the internet that are required to restore MK Specialities' M–14 receivers to fire automatically. No specific training is required to use these tools, and no special authorization or permit is required to purchase these gun parts. Clearly, then, no expert qualifications are required to "readily store" a weapon to fire automatically, and the statute, therefore, does not suggest that only experts are prohibited by the law. Accordingly, Section 5845(b) provides fair notice to a person of ordinary intelligence that certain conduct is forbidden by the statute. Therefore, the Court finds that the phrase "can be readily restored" is not unconstitutionally vague.

## IV.  CONCLUSION

Based on the foregoing, the Court **GRANTS** the Government's summary judgment motion, **DENIES** the claimants' summary judgment motion and **ORDERS** that the case be stricken from its docket.

The Court further **ORDERS** that judgment be entered in favor of the Government and MK Specialities Model M–14 Machinegun Serial Numbers 1447797, 21954, 1082375, 1394870, 539240, 680531, 1506762, 1335989, 1359769, 1020490, 49488, 1157650, 1181446, 1325123, 1331982, 1392697, 1434500, 1478082, 1497879, 1560920, 1573826, 217140, 223003, 26268, 336512, 376163, 39524, 419875, 48678, 5175, 575495, 828590, 947264, and 977294 are **FORFEITED** to the United States of America and shall be delivered into the custody of the United States Department of Treasury for disposition according to law.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.